UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

DEBORAH ADAMS,                              :

                      Plaintiff,         :   Civil Action No.:
                                         :     307CV01035

    -against-                               :

                                         :   October 28, 2008
NATIONAL ENGINEERING SERVICE CORPORATION:
and VERIFICATIONS INC.                      :

                     Defendants.            :

                                       :

---

### **DEFENDANT, VERIFICATION INC.'S, MOTION FOR SUMMARY JUDGMENT**

Verifications Inc. ("Verifications"), Defendant in the above-referenced matter, hereby respectfully moves for the Court to grant Summary Judgment as to all Counts by the Plaintiff against Verifications and all Cross-Claims by Verifications against Co-Defendant, National Engineering Service Corporation.

Yours, etc.,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By: _____
Michael W. Coffey
Attorneys for the Defendant
VERIFICATIONS INC.
3 Gannett Drive
White Plains, New York 10604
Tel: (914) 323-7000
Fax: (914) 323-7001
Michael.Coffey@wilsonelser.com
U.S. Court Number 18310
File No.: 08379.00072

## **ORDER**

The foregoing Motion having been heard by the court, it is hereby ORDERED:

GRANTED/DENIED

By the Court,

_____

Judge/Clerk

### CERTIFICATION

It is hereby certified that the above was electronically filed and mailed to all counsel of record on the 28th day of October 2008:

TO:

Madsen, Prestley & Parenteau, LLC
Attorneys for Plaintiff
44 Capitol Avenue
Suite 201
Hartford, CT 06106
Attn:  Attorney William Madsen

Goldstein and Peck, P.C.
1087 Broad Street
Bridgeport, CT 06604
Attn:  Attorney William J. Kupinse, Jr.

Michael W. Coffey
(U.S. Court No. 18310)

2165158.1

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DEBORAH ADAMS, | : | |
| Plaintiff, | : | Civil Action No.: |
| | : | 307CV01035 |
| | : | |
| -against- | : | |
| | : | October 28, 2008 |
| NATIONAL ENGINEERING SERVICE CORPORATION | : | |
| and VERIFICATIONS INC. | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

## DEFENDANT, VERIFICATIONS INC.'S, MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Verifications Inc. ("Verifications"), Defendant in the above referenced matter, respectfully submits this Memorandum of Law in Support of its Motion for Summary Judgment as to all Counts against it by the Plaintiff and all Cross Claims against it by co-defendant, National Engineering Service Corporation ("National").

I.      FACTS

Kathy Shapleigh, Senior Contingent Resource Consultant at the Guidant Group, submitted an order for a temporary employment position of Contract Analyst at Northeast Utilities Service Company ("Northeast"). (Exhibit C, Chris Sullivan's deposition at 10-12). The Guidant Group, Inc., (formally Comensura, "Guidant") contracted with Northeast Utilities Service Company ("Northeast") to oversee Northeast's temporary contractual hiring. (Exhibit D, Kathy Shapleigh deposition at 6-7). Guidant receives orders for contract employees from Northeast, and then Guidant submits these orders to one of the 40 or more staffing agencies that are a part of the Guidant Group program. (Exhibit D, Kathy Shapleigh deposition at 8-9).

Larry O'Keefe, technical recruiter for National, submitted plaintiff's resume as a candidate for the Contract Analyst position. (Exhibit C, Chris Sullivan's deposition at 16-18). National is a staffing agency that provides other companies with employees on a contract/temporary basis. (Exhibit C, Chris Sullivan's deposition at 5-6). National was one of the staffing agencies that contracted with Guidant to be part of the Guidant Group program. (Exhibit C, Chris Sullivan's deposition at 8-10).

The staffing agencies, such as National, submit resumes/candidates to fill the orders placed by Guidant. Guidant then forwards the resumes onto Northeast for their review and approval. (Exhibit D, Kathy Shapleigh deposition at 10-11). The hiring manager at Northeast makes the ultimate decision whether to hire the proposed candidate(s) for a contract employee position. (Exhibit D, Kathy Shapleigh deposition at 11). Once a candidate is selected, Northeast contacts Guidant and makes an offer. Guidant then contacts the staffing agency and makes the offer of temporary employment. (Exhibit D, Kathy Shapleigh deposition at 11). This employment offer is contingent and depends on whether the candidate passes the background check and drug screening test. (Exhibit D, Kathy Shapleigh deposition at 22).

After Larry O'Keefe submitted plaintiff's resume, Kathy Shapleigh sent the Plaintiff's resume to Northeast. (Exhibit D, Shapleigh's deposition at 9-10). Kathy Shapleigh scheduled the plaintiff's interview with the hiring manager of Northeast. (Exhibit. D, Shapleigh's deposition at 10-11). Larry O'Keefe then contacted the plaintiff and advised her that she would be interviewed by Byron Maddox at Northeast. (Exhibit E, plaintiff's deposition at 62).

Plaintiff interviewed with Mr. Maddox at Northeast. (Exhibit C, Chris Sullivan's deposition at 21). Soon thereafter, Northeast contacted Guidant about extending an offer for the contract analyst position to plaintiff. (Exhibit. D, Shapleigh's deposition at 13-14). Guidant then

2

sent an automatically generated message to National telling National to extend an offer of employment to plaintiff for the contract analyst position. (Exhibit C, Chris Sullivan's deposition at 22-23).

Larry O'Keefe offered the contract analyst position to plaintiff via telephone, but said the offer was contingent on plaintiff passing criminal background and drug screening tests. (Exhibit C, Chris Sullivan's deposition at 23-24). At this time, plaintiff was working as a paralegal with C.B. Richard Ellis. (Exhibit E, plaintiff's deposition at 42). Plaintiff was placed in this thirty-day position with C.B. Richard Ellis by Legal Now, another staffing agency. (Exhibit E, plaintiff's deposition at 42).

Plaintiff orally accepted the employment offer for the contract analyst position while speaking with Mr. O'Keefe on the telephone. (Exhibit C, Chris Sullivan's deposition at 24-25). After receiving the contingent offer from National, plaintiff gave Legal Now two weeks notice that she would be leaving her position with C.B. Richard Ellis. (Exhibit E, plaintiff's deposition at 42).

National sent plaintiff an employment packet, which included but was not limited to an I9 form, background release form, drug testing form and direct deposit documents. (Exhibit C, Chris Sullivan's deposition at 24-25). Shortly thereafter, plaintiff received the aforementioned employment packet from National in the mail. (Exhibit E, plaintiff's deposition at 66).

The employment packet contained the "Consumer Report/Investigative Consumer Report Disclosure and Release of Information Authorization" form, which the Plaintiff signed on May 2, 2007. (Exhibit F, Consumer Report/ Information Authorization form). Said form authorized National and Verifications to conduct plaintiff's background investigation and electronically submit the results of said investigation. (Exhibit F, Consumer Report/ Information Authorization

form).  By signing the Consumer Report/Investigative Consumer Report Disclosure and Release of Information Authorization" form, plaintiff acknowledged that she needed to be willing to take and pass a background check and drug screening test to receive the employment assignment. (Exhibit F, Consumer Report/ Information Authorization form).  Plaintiff understood that the results of the background check and drug screening test would be released to Northeast and Guidant.  (Exhibit E, plaintiff's deposition at 139-140).

Verifications is a company that handles background investigations.  (Exhibit A, Mary Poquette's deposition at 6.)   Verifications and National Engineering Service Corporation ("National") entered into User Certification and Client Services Agreement by which National agreed to purchase employment screening products from Verifications, including Background Investigations and Substance Abuse Services.  (Exhibit B, User Service Agreement).

Plaintiff returned the completed employment packet to National, and National employee, Maura Demars, entered plaintiff's information into Verifications' online system.  (Exhibit C, Chris Sullivan's deposition at 25).  Verifications searched National Background Data's database of criminal records using plaintiff's name and date of birth.  (Exhibit A, Poquette's deposition at 27-28).  Based on the results of this search, several possible criminal records were identified by Verifications that could belong to plaintiff.  (Exhibit A, Poquette's deposition at 28).

Verifications ordered additional research to be done by its field researcher in the jurisdiction of Pittsylvania County, Virginia.  (Exhibit A, Poquette's deposition at 29).  The field researcher performed the additional research and sent the report Verifications.  (Exhibit A, Poquette's deposition at 30; Exhibit G, Pittsylvania County Court Record).  The report indicated that "Debra Jean Adams" with plaintiff's date of birth, and "Debra Adams" with plaintiff's date of

2159611.1

birth, had criminal convictions in Pittsylvania, Virginia.  (Exhibit G, Pittsylvania County Court Record).

On May 8, 2007, Verifications provided a summarized version of this report to National. (Exhibit A, Poquette's deposition at 34).     Soon thereafter, Chris Sullivan, account manager/recruiter with National, sent an email to Kathy Shapleigh at Guidant on May 8, 2007 at 3:49 p.m. regarding plaintiff's background report.  (Exhibit. D, Shapleigh's deposition at 18-19).

Plaintiff called Chris Sullivan at National on May 8, 2007 at approximately 6 p.m. (Exhibit E, plaintiff's deposition at 71; Exhibit C, Chris Sullivan's deposition at 28).  Chris Sullivan stated that there was an issue with plaintiff's background check.  (Exhibit E, plaintiff's deposition at 71).  Plaintiff told Chris Sullivan that she underwent a background investigation for an employment position in 2006, which stated false prior convictions.     (Exhibit E, plaintiff's deposition at 72-73).  Plaintiff only raised the issue of her prior false background report from 2006 after she was told of the results of her background investigation, which is the subject of this underlying action. (Exhibit E, plaintiff's deposition at 72-73).

After speaking with plaintiff on the evening of May 8, 2007, Chris Sullivan sent a second email to Kathy Shapleigh at 6:21 p.m on May 8, 2007, which stated that plaintiff disputed the results of the background check.  (Exhibit. D, Shapleigh's deposition at 27-28; Exhibit C, Chris Sullivan's deposition at 29-30).   At some point on between Chris Sullivan's 3:49 p.m. and 6:21 p.m. emails to Kathy Shapleigh on May 8, 2007, Ms. Shapleigh contacted the hiring manager at Northeast and advised that plaintiff failed the background check and was ineligible to work. (Exhibit D, Shapleigh's deposition at 22-23).   At this time, Kathy Shapleigh also entered into the Guidant system that the candidate failed the background check and the order for contract analyst was still active and needed to be filled.  (Exhibit D, Shapleigh's deposition at 23).

At 6:25 p.m. on May 8, 2007, Chris Sullivan sent a third email to Kathy Shapleigh again indicating that plaintiff was disputing the results of the background check.   (Exhibit D, Shapleigh's deposition at 29; Exhibit C, Chris Sullivan's deposition at 29).  After receiving the second and third emails from Chris Sullivan at 6:21 p.m and 6:25 p.m on May 8, 2007, Kathy Shapleigh did not contact Northeast to let them know that plaintiff was disputing the results of the background search. (Exhibit D, Shapleigh's deposition at 28-29).  Ms. Shapleigh considered the plaintiff to have failed her background check at this time, and she stated that she had no ability to delay the termination of the employment offer under she received a second background check. (Exhibit D, Shapleigh's deposition at 28-29).

On May 9, 2007, Verifications learned that plaintiff disputed the results of the background check when it received a faxed letter from plaintiff to the Federal Trade Commission. (Exhibit A, Poquette's deposition at 35).  On May 9, 2007, plaintiff also contacted Verifications directly to dispute the results of the background check.  (Exhibit A, Poquette's deposition at 42-43).

Later that same day, Verifications' employee, Robin Mack, put the verification of plaintiff's background check on hold. (Exhibit A, Poquette's deposition at 43-44).  Verifications conducted further investigation regarding plaintiff's disputed background check.  (Exhibit A, Poquette's deposition at 44-45).   On May 10, 2007, Verifications sent the revised background report to National, which removed the criminal information from plaintiff's background report. (Exhibit A, Poquette's deposition at 49).  At 4:14 p.m. on May 11, 2007, Verifications called plaintiff and advised her that the report was corrected and National had been contacted regarding the same. (Exhibit A, Poquette's deposition at 49-50).

6

On May 11, 2007, Chris Sullivan contacted Kathy Shapleigh and advised her that the plaintiff's background check had been corrected. (Exhibit D, Shapleigh's deposition at 30; Exhibit C, Chris Sullivan's deposition at 33). At 5:55 p.m. on May 11, 2007, Kathy Shapleigh emailed Pat Angelo-Park at Northeast that plaintiff's background check was corrected, and that plaintiff was not eligible for employment. (Exhibit D, Shapleigh's deposition at 32-33). As of 5:55 p.m. on May 11, 2007, the contract analyst position was still listed as open and had not been filled by another candidate. (Exhibit D, Shapleigh's deposition at 33-34).

The hiring manager at Northeast indicated that he was pursuing bringing in an intern to fill the open contract analyst position. (Exhibit D, Shapleigh's deposition at 36). Northeast eventually cancelled the open contract analyst position. (Exhibit D, Shapleigh's deposition at 34).

## II.   PROCEDURAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(b), "a party against whom a claim . . . is asserted . . . may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." "The judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

"Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Nebraska v. Wyoming, 507 U.S. 584, 590 (1993). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

2159611.1

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "The moving party is entitled to judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Id.

**III.   ARGUMENT SECTION:**

**A.   DEFENDANT, VERIFICATIONS' INC., COMPLIED WITH THE REQUIREMENTS OF 15 U.S.C. §1681(e)(b) AND THEREFORE COUNT FIVE OF PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED**

Verifications fully complied with the requirements of 15 U.S.C. §1681(e)(b), and therefore the motion for summary judgment with respect to Count Five of plaintiff's complaint should be granted.

15 U.S.C. §1681(e)(b) states: "Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

In order to state a claim under 15 U.S.C. §1681(e)(b),  a consumer must sufficiently allege "that a credit reporting agency prepared a report containing 'inaccurate' information." Cahlin v. General Motors Acceptance Corp., 936 F.2d 1151, 1156 (11th Cir. 1991). However, the credit reporting agency is not automatically liable even if the consumer proves that it prepared an inaccurate credit report because the FCRA "does not make reporting agencies strictly liable for all inaccuracies." Id. A credit reporting agency is not liable under the FCRA if it followed "reasonable procedures to assure maximum possible accuracy," but nonetheless reported inaccurate information in the consumer's credit report. Id.

Courts generally agree that in order to succeed on a claim under 15 U.S.C. § 1681e(b), a plaintiff must show that:

> (1) the consumer reporting agency was negligent in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (2) the consumer reporting agency reported inaccurate information about the plaintiff; (3) the [*135] plaintiff was injured; and (4) the consumer reporting agency's negligence proximately caused the plaintiff's injury. Collins v. Experian Credit Reporting

8

Serv., 494 F. Supp. 2d 127, 134-35 (Conn. 2007); Whelan v. Trans Union Credit Reporting Agency, 862 F. Supp. 824, 829 (E.D.N.Y. 1994) (citing Houston v. TRW Info. Servs., Inc., 1989 U.S. Dist. LEXIS 4437, 1989 WL 59850 (S.D.N.Y. May 2, 1989), [**22] aff'd, 896 F.2d 543 (2d Cir. 1990)).

Even if the information is shown to be inaccurate, a plaintiff must still present some evidence that the credit reporting agency failed to follow reasonable procedures in preparing the report in question. Whelan, 862 F. Supp. at 829.

Furthermore, a credit reporting agency will not be held liable where an item of information, received from a source that it reasonably believes is reputable, turns out to be inaccurate unless the agency receives notice of systemic problems with its procedures. Sarver v. Experian Information Solution, 390 F.3d 969, 972 (7th Cir. 2004).

Moreover, in Henson v. CSC Credit Services, the court held that a credit reporting agency is not liable under the FCRA for reporting inaccurate information obtained from a court's Judgment Docket, absent prior notice from the consumer that the information may be inaccurate. Henson, 29 F.3d 280, 285 (7th Cir. 1994). The court further stated that a rule to the contrary would require reporting agencies to go beyond numerous court records and engage in additional background research, which would substantially increase costs that are ultimately passed to customers and individual consumers. Id. "The consumer is in a better position than the credit reporting agency to detect errors appearing in court documents dealing with the consumer's own prior litigation history." Henson, 29 F.3d at 286.

In the case at bar, plaintiff has not presented any evidence to demonstrate that Verifications violated 15 U.S.C. §1681(e)(b) and failed to follow reasonable procedures in conducting the subject background search. At the request of National, Verifications conducted a background search on the plaintiff. Verifications used National Background Data, one of the nation's largest reputable database repositories, to conduct the criminal conviction research.

(Exhibit H, Barry Nadell's expert report at 10).   Verifications used the National Background Data repository and conducted searches using "Deborah Adams" and the plaintiff's date of birth. (Exhibit H, Barry Nadell's expert report at 11).   The National Background Data repository regurgitated all like names with matching identifiers. (Exhibit H, Barry Nadell's expert report at 11).   The social security number was not available in the court file.   (Exhibit H, Barry Nadell's expert report at 11).   The results of this search stated that someone with the name "Debra Adams" and a matching date of birth, and that someone with the name "Debra Jean Adams" and a matching date of birth, had convictions in Virginia..   Verifications then contacted a field investigator who confirmed the existence of the convictions.   (Exhibit H, Barry Nadell's expert report at 11).   Based on the results of this extensive search,   Verifications then provided National with the background report, which stated that someone with the name "Debra Adams" and a matching date of birth, and that someone with the name "Debra Jean Adams" and a matching date of birth, had convictions in Virginia.

It is clear that Verifications implemented reasonable procedures for conducting criminal background searches.   A match for criminal convictions was found using two identifiers, and the convictions were then confirmed by a field investigator.   Plaintiff has presented no evidence that Verifications failed to follow reasonable procedures in preparing the background report. According to Fair Credit Reporting Act expert Barry Nadell, Verifications would have been negligent if they did NOT report the match with similar name and date of birth.   (Exhibit H, Barry Nadell's expert report at 21).

Furthermore, as stated above, a reporting agency will not be held liable if it receives information from a reputable source, which turns out to be inaccurate, unless the agency receives notice of systemic problems with its procedures.   Verifications used National Background Data, a

10

database repository used by many companies in the background screening industry, to conduct the background search. This information clearly came from a reputable source, and Verifications did not have any notice as to any systematic problems with its procedures. Sarver v. Experian Information Solution, 390 F.3d at 972.

Moreover, courts have held that the consumer is in a better position that the credit reporting agency to detect errors dealing with the consumer's prior history. Henson, 29 F.3d 280 at 285. In the case at bar, plaintiff testified that a similar occurrence happened with respect to a background search performed in 2006. Plaintiff failed to tell anyone at National or Verifications that a background investigation performed in 2006 incorrectly reported that she had criminal convictions in Virginia until after the initial background report was created. Plaintiff also failed to tell anyone at National or Verifications that she proof that said convictions in Virginia belonged to another individual until after the initial background report was created. Plaintiff was in the best position to alert everyone as to the potential inaccurate convictions connected to her name, yet failed to do so.

Even assuming arguendo that Verifications did not have reasonable procedures in place, plaintiff would still have to prove that reporting agency's negligence proximately caused the plaintiff's injury. Plaintiff has not presented any evidence to show that Verifications caused her alleged injury. Once plaintiff disputed the contents of the initial background report, Verifications provided an updated report within two days. (Exhibit A, Poquette's deposition at 49). At this time, the subject employment position with Northeast Utilities was still open. (Exhibit D, Shapleigh's deposition at 33-34). Eventually, Northeast cancelled the open contract analyst position. (Exhibit D, Shapleigh's deposition at 34). However, this occurred days after

the background report was corrected, and plaintiff has presented no evidence that the first background report was the reason she was not hired.

In conclusion, plaintiff has not presented any evidence to demonstrate that Verifications violated 15 U.S.C. §1681(e)(b) and failed to follow reasonable procedures in conducting the subject background search. Verifications relied on a reputable database repository to perform the criminal background search and verified the convictions using a field investigator. Furthermore, plaintiff has presented no evidence that the first background report was the reason she was not hired. Finally, plaintiff was in the best position to alert everyone as to the potential inaccurate convictions connected to her name, yet failed to do so. As such, Verifications fully complied with the requirements of 15 U.S.C. §1681(e)(b) and the motion for summary judgment with respect to Count Five of plaintiff's complaint should be granted.

**B. DEFENDANT, VERIFICATIONS' INC., COMPLIED WITH THE REQUIREMENTS OF 15 U.S.C. §1681(k) AND THEREFORE COUNT SIX OF PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED**

Verifications fully complied with the requirements of 15 U.S.C. §1681(k), and therefore the motion for summary judgment with respect to Count Six of plaintiff's complaint should be granted.

15 U.S.C. §1681(k) states:

> (a) In general. A consumer reporting agency which furnishes a consumer report for employment purposes and which for that purpose compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall--
> (1) at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; OR
> (2) maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date. For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported.

12

15 U.S.C. §1681(k) requires a reporting agency to notify the consumer OR maintain strict procedures. (Exhibit H, Barry Nadell's expert report at 10). Reporting agencies are not required to do both under the Fair Credit Reporting Act. (Exhibit H, Barry Nadell's expert report at 10).

In the case at bar, Verifications had strict procedures in place with respect to criminal background searches. When a criminal record was reported using the National Background Data repository, further research was conducted at the local jurisdiction level by a field investigator to confirm or dispute the findings within the search.

According to Fair Credit Reporting Act expert, Barry Nadell, credit reporting agencies follow strict procedures designed to insure that the record to be reported is up to date. (Exhibit H, Barry Nadell's expert report at 10). With respect to criminal conviction research, criminal court files within the jurisdiction of the conviction are the most accurate and up to date source. (Exhibit H, Barry Nadell's expert report at 10).

Verifications used National Background Data, one of the nation's largest reputable database repositories, to conduct the criminal conviction research. (Exhibit H, Barry Nadell's expert report at 10). Verifications then contacted a field investigator who confirmed the existence of the convictions. (Exhibit H, Barry Nadell's expert report at 11). Verifications used a reputable source and had a field investigator search the criminal court files in the jurisdiction of the conviction to confirm the convictions. By all accounts, Verifications used the most accurate and up to date source and followed strict procedures.

As such, Verifications fully complied with the requirements of 15 U.S.C. §1681(k), and the motion for summary judgment with respect to Count Six of plaintiff's complaint should be granted.

13

### C.   DEFENDANT, VERIFICATIONS' INC., COMPLIED WITH THE REQUIREMENTS OF 15 U.S.C. §1681(i) AND THEREFORE COUNTS FIVE AND SIX OF PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED

Verifications fully complied with the requirements of 15 U.S.C. §1681(i), and therefore the motion for summary judgment with respect to Counts Five and Six of plaintiff's complaint should be granted.

15 U.S.C. §1681(i) deals with the procedures in the case of a disputed report. 15 U.S.C. §1681(i)(a)(1)(A) states:

> "Subject to subsection (f), if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."

Once plaintiff disputed the contents of the initial background report, Verifications provided an updated report within two days. (Exhibit A, Poquette's deposition at 49). At this time, the subject employment position with Northeast Utilities was still open. (Exhibit D, Shapleigh's deposition at 33-34). Verifications provided an updated report well within the 30 day time frame allocated by the Fair Credit Reporting Act.

Any adverse action taken with respect to plaintiff's application for the contract analyst position was performed by National and/or Northeast Utilities. Once National received the first background report from Verifications, National then forwarded the report onto Northeast. Despite the fact that Verifications provided an updated report in a timely manner within two days after plaintiff disputed the contents, National and/or Northeast decided not to offer the open position to plaintiff.

14

2159611.1

Furthermore, Verifications and National Engineering Service Corporation ("National") entered into User Certification and Client Services Agreement by which National agreed to purchase employment screening products from Verifications, including Background Investigations and Substance Abuse Services. (Exhibit B, User Service Agreement). Pursuant to this agreement, National agreed that if adverse employment action is to be taken, based either in whole or part on information provided by Verifications in a Consumer report, National would comply with adverse action requirements as defined in Fair Credit Reporting Act. (Exhibit B, User Service Agreement).

Assuming arguendo that this court finds the first background report was the reason plaintiff was not offered the open position, it was the responsibility of National and/or Northeast under the Fair Credit Reporting Act, as plaintiff's potential employer, to allow plaintiff an opportunity to dispute the findings. Therefore, Verifications satisfied its obligations and requirements under the Fair Credit Reporting Act, and Counts Five and Six of plaintiff's complaint should be dismissed.

**D.   PLAINTIFF'S ALLEGATIONS OF NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AS TO DEFENDANT, VERIFICATIONS INC., (COUNT ELEVEN OF PLAINTIFF'S COMPLAINT) SHOULD BE DISMISSED**

Plaintiff has demonstrated no evidence with respect to the allegations of negligent infliction of emotional distress as to Verifications, and therefore the motion for summary judgment with respect to Count Eleven of plaintiff's complaint should be granted.

15 U.S.C. §1681(h)(e) states:

> "No consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 609, 610, or 615, or based on information disclosed

15

by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report, except as to false information furnished with malice or willful intent to injure such consumer."

Plaintiff has not presented any evidence to show that Verifications provided false information which was furnished with malice or willful intent to injure the plaintiff. Verifications used National Background Data, one of the nation's largest reputable database repositories, to conduct the criminal conviction research. (Exhibit H, Barry Nadell's expert report at 10). Verifications then contacted a field investigator who confirmed the existence of the convictions. (Exhibit H, Barry Nadell's expert report at 11). Within two days of learning of plaintiff's dispute of the background report, Verifications provided an updated report. There is no evidence to indicate that Verifications' conduct was either willful or malicious. Furthermore, plaintiff's complaint does not include any counts against Verifications as to 15 U.S.C. §1681(n), which pertains to willful noncompliance with the Fair Credit Reporting Act. Absent any allegations or evidence of willful or malicious conduct, plaintiff's negligent infliction of emotional distress claims as to Verifications should be dismissed.

Notwithstanding the above argument, in order to demonstrate evidence of a claim for negligent infliction of emotional distress, plaintiff must prove that the defendant "should have realized that its conduct was involved in an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm." Downing v. W. Haven Bd. of Educ., 162 F. Supp. 2d 19 (USDC Conn. 2001); Ancona v. Manafort Brothers, Inc., 746 A.2d 184 (Conn. App. 2000); Morris v. Hartford Courant Co., 513 A.2d 66; Montinieri v. Southern New England Telephone Co., 398 A.2d 1180 (1978).

"This essentially requires that the fear or distress experienced by the plaintiffs be reasonable in light of the conduct of the defendants. If the fear were unreasonable in light of the

16

defendants' conduct, the defendants would not have recognized that their conduct could cause this distress and, therefore, they would not be liable." Downing v. W. Haven Bd. of Educ., 162 F. Supp. 2d at 40-41.

Verifications followed strict procedures before providing National Engineering with the background report.  Verifications used National Background Data, one of the nation's largest reputable database repositories, to conduct the criminal conviction research.  (Exhibit H, Barry Nadell's expert report at 10).  Verifications then contacted a field investigator who confirmed the existence of the convictions.  (Exhibit H, Barry Nadell's expert report at 11).  Based on this, Verifications fully believed that the initial report was accurate and had no reason to believe that its conduct would cause distress for the plaintiff.

Additionally, assuming arguendo that this court finds plaintiff's alleged distress to be reasonable, it was not Verifications' conduct that caused said distress.  Verifications was not the party that took adverse action with respect to plaintiff's application for employment.  The decision to withdraw the contract analyst position occurred several days after Verifications provided the updated report.  It was the decision of National and/or Northeast to withdraw this position not Verifications. Verifications had no reason to believe that its conduct would cause National and Northeast to ignore the adverse action rules of the Fair Credit Reporting Act.

Finally, plaintiff testified that a similar occurrence happened with respect to a background search performed in 2006.  Plaintiff was well aware that her name was connected to possible criminal conviction charges.  Therefore, any fear or distress caused by the initial background report would have been unreasonable.

In conclusion, defamation claims against a credit reporting agency are barred by the Fair Credit Reporting Act absent evidence of willful or malicious conduct.  Notwithstanding that

2159611.1

argument, Verifications followed strict procedures in conducting the initial background search. Within two days of learning of plaintiff's dispute of the background report, Verifications provided an updated report. Furthermore, Verifications did not play a role in the ultimate decision not to hire plaintiff for the contract analyst. Finally, plaintiff was well aware that her name was connected to possible criminal conviction charges. As such, any distress experienced by plaintiff was unreasonable, and moreover, Verifications could not have recognized that its conduct would have caused any distress for the plaintiff. Therefore, the plaintiff's claim for negligent infliction of emotional distress as to Verifications should be dismissed.

### E.   PLAINTIFF'S ALLEGATIONS OF DEFAMATION/LIBEL AS TO DEFENDANT, VERIFICATIONS INC., (COUNT TWELVE OF PLAINTIFF'S COMPLAINT) SHOULD BE DISMISSED

Plaintiff has demonstrated no evidence with respect to the allegations of defamation/libel as to Verifications, and therefore the motion for summary judgment with respect to Count Twelve of plaintiff's complaint should be granted.

15 U.S.C. §1681(h)(e) states:

> "No consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 609, 610, or 615, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report, except as to false information furnished with malice or willful intent to injure such consumer."

Plaintiff has not presented any evidence to show that Verifications provided false information which was furnished with malice or willful intent to injure the plaintiff. Verifications used National Background Data, one of the nation's largest reputable database repositories, to conduct the criminal conviction research. (Exhibit H, Barry Nadell's expert

18

report at 10). Verifications then contacted a field investigator who confirmed the existence of the convictions. (Exhibit H, Barry Nadell's expert report at 11). Within two days of learning of plaintiff's dispute of the background report, Verifications provided an updated report. There is no evidence to indicate that Verifications' conduct was either willful or malicious. Furthermore, plaintiff's complaint does not include any counts against Verifications as to 15 U.S.C. §1681(n), which pertains to willful noncompliance with the Fair Credit Reporting Act. Absent any allegations or evidence of willful or malicious conduct, plaintiff's defamation claims as to Verifications should be dismissed.

Notwithstanding the aforementioned argument that the Fair Credit Reporting Act bar claims for defamation absent willful or malicious conduct, in order for plaintiff to establish a claim for defamation, plaintiff must demonstrate that:

> "(1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the Plaintiffs reputation suffered injury as a result of the statement." Cweklinsky v. Mobil Chemical Co., 267 Conn. 210, 217 (2004).

Plaintiff has not demonstrated that Verifications published a defamatory statement to a third person. In plaintiff's employment packet, there was a "Consumer Report/Investigative Consumer Report Disclosure and Release of Information Authorization" form, which the Plaintiff signed on May 2, 2007. (Exhibit F, Consumer Report/ Information Authorization form). Said form authorized National and Verifications to conduct plaintiff's background investigation and electronically submit the results of said investigation. (Exhibit F, Consumer Report/ Information Authorization form). By signing the Consumer Report/Investigative Consumer Report Disclosure and Release of Information Authorization" form, plaintiff acknowledged that she needed to be willing to take and pass a background check and drug screening test to receive the employment assignment. (Exhibit F, Consumer Report/ Information Authorization form). Verifications never

published the results of the background check to anyone except National, who plaintiff authorized to receive said results. It was National that went ahead and released these results to Guidant and Northeast before giving plaintiff an opportunity to dispute the results of the background check.

Furthermore, plaintiff has not presented any evidence to show that any alleged publication by Verifications to a third person caused her alleged injury. Once plaintiff disputed the contents of the initial background report, Verifications provided an updated report within two days. (Exhibit A, Poquette's deposition at 49). At this time, the subject employment position with Northeast Utilities was still open. (Exhibit D, Shapleigh's deposition at 33-34). Eventually, Northeast cancelled the open contract analyst position. (Exhibit D, Shapleigh's deposition at 34). However, this occurred days after the background report was corrected, and plaintiff has presented no evidence that the first background report was the reason she was not hired.

Moreover, if any alleged publication caused an injury to plaintiff's reputation, it would have been the publications by National to Guidant and Northeast. Verifications only shared the results of the background check to National, who plaintiff authorized to receive said results. If there was any injury to plaintiff's reputation, it would have been the result of National releasing the results of background check to Guidant and Northeast before giving plaintiff an opportunity to dispute the results of the background check.

In conclusion, defamation claims against a credit reporting agency are barred by the Fair Credit Reporting Act absent evidence of willful or malicious conduct. Notwithstanding that argument, plaintiff has demonstrated no evidence with respect to the allegations of defamation/libel as to Verifications, and therefore the motion for summary judgment with respect to Count Twelve of plaintiff's complaint should be granted.

2159611.1

F.  **PLAINTIFF'S ALLEGATIONS OF NEGLIGENCE AS TO DEFENDANT, VERIFICATIONS INC., (COUNT THIRTEEN OF PLAINTIFF'S COMPLAINT) SHOULD BE DISMISSED**

Plaintiff has demonstrated no evidence with respect to the allegations of negligence as to Verifications, and therefore the motion for summary judgment with respect to Count Thirteen of plaintiff's complaint should be granted.

15 U.S.C. §1681(h)(e) states:

> "No consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 609, 610, or 615, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report, except as to false information furnished with malice or willful intent to injure such consumer."

Plaintiff has not presented any evidence to show that Verifications provided false information which was furnished with malice or willful intent to injure the plaintiff. Verifications used National Background Data, one of the nation's largest reputable database repositories, to conduct the criminal conviction research.  (Exhibit H, Barry Nadell's expert report at 10).  Verifications then contacted a field investigator who confirmed the existence of the convictions. (Exhibit H, Barry Nadell's expert report at 11).  Within two days of learning of plaintiff's dispute of the background report, Verifications provided an updated report.  There is no evidence to indicate that Verifications' conduct was either willful or malicious.  Furthermore, plaintiff's complaint does not include any counts against Verifications as to 15 U.S.C. §1681(n), which pertains to willful noncompliance with the Fair Credit Reporting Act.  Absent any allegations or evidence of willful or malicious conduct, plaintiff's negligence claims as to Verifications should be dismissed.

2159611.1

Notwithstanding the aforementioned argument that the Fair Credit Reporting Act bar claims for negligence absent willful or malicious conduct, in order for plaintiff to establish a claim for negligence, plaintiff must demonstrate that there was a duty, a breach of that duty, causation and actual injury. Roach v. Ivari Int'l Ctrs., Inc., 77 Conn. App. 93, 99 (2003); RK Constructors, Inc. v. Fusco Corp., 231 Conn. 381, 384 (1994). "The standard of care in the ordinary negligence case is the care that a reasonably prudent person would exercise under the same circumstances." Roach v. Ivari Int'l Ctrs., Inc., 77 Conn. App. at 102; Smith v. Leuthner, 156 Conn. 422, 424-25 (1968).

There is no evidence to show that Verifications breached any duty it may have had with the plaintiff. Verifications used National Background Data, one of the nation's largest reputable database repositories, to conduct the criminal conviction research. (Exhibit H, Barry Nadell's expert report at 10). Verifications then contacted a field investigator who confirmed the existence of the convictions. (Exhibit H, Barry Nadell's expert report at 11). Within two days of learning of plaintiff's dispute of the background report, Verifications provided an updated report. Clearly, a reasonable person in the position of Verifications would have conducted a similar search. Mr. Nadell stated in his report that National Background Data was a very reputable database repository that was used by many companies in the background screening industry. (Exhibit H, Barry Nadell's expert report at 11).

Furthermore, plaintiff has not presented any evidence to show that the alleged negligence of Verifications caused her alleged injury. Once plaintiff disputed the contents of the initial background report, Verifications provided an updated report within two days. (Exhibit A, Poquette's deposition at 49). At this time, the subject employment position with Northeast Utilities was still open. (Exhibit D, Shapleigh's deposition at 33-34). Eventually, Northeast

22

cancelled the open contract analyst position.   (Exhibit D, Shapleigh's deposition at 34). However, this occurred days after the background report was corrected, and plaintiff has presented no evidence that the first background report was the reason she was not hired.

In conclusion, negligence claims against a credit reporting agency are barred by the Fair Credit Reporting Act absent evidence of willful or malicious conduct.   Notwithstanding that argument, plaintiff has demonstrated no evidence with respect to the allegations of negligence as to Verifications, and therefore the motion for summary judgment with respect to Count Thirteen of plaintiff's complaint should be granted.

## IV.   PLAINTIFF'S STATE LAW CAUSES OF ACTION AGAINST VERIFICATIONS SHOULD BE DISMISSED

The common law causes of action in Counts Eleven, Twelve and Thirteen of plaintiff's complaint should be dismissed if Verifications' motion for judgment is granted with respect to the plaintiff's Fair Credit Reporting Act causes of action in Counts Five and Six.

28 U.S.C.§1367(a) states that the district courts shall have supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.   In deciding whether or not to exercise jurisdiction, the district courts lean towards avoiding needless decisions of state law in order to promote comity and justice.   If the federal claims are dismissed before trial, many courts have taken the position that the state claims should be dismissed as well.   Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2nd Cir. 2006). As such, for the sake of judicial economy and comity, if summary judgment is granted for Verifications with respect to the Fair Credit Reporting Act causes of action (Counts Five and Six of plaintiff's complaint), the court should also dismiss plaintiff's state law causes of action (Counts Eleven, Twelve and Thirteen).

## V.    VERIFICATIONS' CROSS CLAIMS AGAINST NATIONAL SHOULD BE GRANTED

If the plaintiff was caused to sustain damages at the time and place and in the manner set forth in her Verified Complaint due to any culpability other than her own, such damages were sustained by reason of the conduct and breach of contract of National.  Therefore, Verifications cross-claims against National should be granted.

Verifications and National Engineering Service Corporation ("National") entered into User Certification and Client Services Agreement by which National agreed to purchase employment screening products from Verifications, including Background Investigations and Substance Abuse Services.  (Exhibit B, User Service Agreement).  Pursuant to this agreement, National agreed that if adverse employment action is to be taken, based either in whole or part on information provided by Verifications in a Consumer report, National would comply with adverse action requirements as defined in Fair Credit Reporting Act.  (Exhibit B, User Service Agreement).

If the matter is not dismissed, it is our position that National breached this contract by failing to follow the adverse action requirements of the Fair Credit Reporting Act.  Plaintiff has alleged that adverse action was taken as she the employment offer for the contract analyst position was withdrawn.  National failed to give plaintiff time to dispute the contents of the initial background report.  For these reasons as well as those previously argued within this motion, National's conduct breached the User Service Agreement, and Verifications cross-claims against National should be granted.

## VI:   CONCLUSION

For the reasons set forth above, Verifications motion for summary judgment should be granted in its entirety, as well as other relief deemed appropriate by this court.


Yours, etc.,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP


By: _____
Michael W. Coffey
Attorneys for the Defendant
VERIFICATIONS INC.
3 Gannett Drive
White Plains, New York 10604
Tel: (914) 323-7000
Fax: (914) 323-7001
Michael.Coffey@wilsonelser.com
U.S. Court Number  18310
File No.: 08379.00072

25

## **CERTIFICATION**

It is hereby certified that the above was electronically filed and mailed to all counsel of record on the 28th day of October 2008:

TO:

Madsen, Prestley & Parenteau, LLC
Attorneys for Plaintiff
44 Capitol Avenue
Suite 201
Hartford, CT 06106
Attn:  Attorney William Madsen

Goldstein and Peck, P.C.
1087 Broad Street
Bridgeport, CT 06604
Attn:  Attorney William J. Kupinse, Jr.


Michael W. Coffey
(U.S. Court No. 18310)

26

2159611.1

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151 (11th Cir. 1991) ................. 8

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .............................................. 7, 8

*Collins v. Experian Credit Reporting Serv.*, 494 F. Supp. 2d 127 (Conn. 2007) ........... 8, 9

*Downing v. W. Haven Board of Education*, 162 F. Supp. 2d 19 (USDC Conn. 2001) ........................................................................................ 16, 17

*Henson*, 29 F.3d 280 (7th Cir. 1994) ...................................................... 9, 11

*Houston v. TRW Information Services, Inc.*, 1989 U.S. Dist. LEXIS 4437, 1989 WL. 59850 (S.D.N.Y. May 2, 1989), [22] aff'd, 896 F.2d 543 (2d Cir. 1990) ............ 9

*Kolari v. New York-Presbyterian Hospital*, 455 F.3d 118 (2nd Cir. 2006) ..................... 23

*Nebraska v. Wyoming*, 507 U.S. 584 (1993) ................................................ 7

*Sarver v. Experian Information Solution*, 390 F.3d 969 (7th Cir. 2004) ..................... 9, 11

*Whelan v. Trans Union Credit Reporting Agency*, 862 F. Supp. 824 (E.D.N.Y. 1994) ..................................................................................... 9

### STATE CASES

*Ancona v. Manafort Brothers, Inc.*, 746 A.2d 184 (Conn. App. 2000) ........................... 16

*Cweklinsky v. Mobil Chemical Co.*, 267 Conn. 210 (2004) ..................................... 19

*Montinieri v. Southern New England Telephone Co.*, 398 A.2d 1180 (1978) .................. 16

*Morris v. Hartford Courant Co.*, 513 A.2d 66 ................................................ 16

*RK Constructors, Inc. v. Fusco Corp.*, 231 Conn. 381 (1994) ................................ 22

*Roach v. Ivari International Ctrs., Inc.*, 77 Conn. App. 93 (2003) .......................... 22

*Smith v. Leuthner*, 156 Conn. 422 (1968) .................................................. 22

2166247.1

## FEDERAL STATUTES

15 U.S.C. § 1681(e) ........................................................................................... 8, 9, 12

15 U.S.C. §1681(h) ........................................................................................... 15, 18, 21

15 U.S.C. §1681(i) ........................................................................................... 14

15 U.S.C. §1681(k) ........................................................................................... 12, 13

15 U.S.C. §1681(n) ........................................................................................... 16, 19, 21

28 U.S.C.§1367(a) ........................................................................................... 23

Fed. R. Civ. P. 56(b) ........................................................................................... 7

Fed. R. Civ. P. 56(c) ........................................................................................... 7

2166247.1