UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DEBORAH ADAMS, : | |
| : | Civil Action No.: |
| Plaintiff, : | 307CV01035 |
| : | |
| -against- : | |
| : | October 28, 2008 |
| NATIONAL ENGINEERING SERVICE CORPORATION: | |
| and VERIFICATIONS INC. : | |
| : | |
| Defendants. : | |
| : | |
| : | |

## **LOCAL RULE 56(a)(1) STATEMENT**

Verifications, Inc. ("Verifications"), Defendant in the above-referenced matter, respectfully submits this Local Rule 56(a)(1) Statement with its Motion for Summary Judgment and Memorandum of Law in Support of its Motion for Summary Judgment.

Verifications contends that the following are material facts for which there is no genuine issue to be tried:

1. Verifications is a company that handles background investigations. (Exhibit A, Mary Poquette's deposition at 6.)

2. Verifications and National Engineering Service Corporation ("National") entered into User Certification and Client Services Agreement by which National agreed to purchase employment screening products from Verifications, including Background Investigations and Substance Abuse Services. (Exhibit B, User Service Agreement).

3. National is a staffing agency that provides other companies with employees on a contract/temporary basis. (Exhibit C, Chris Sullivan's deposition at 5-6).

2157934.1

4. The Guidant Group, Inc., (formally Comensura, "Guidant") contracted with Northeast Utilities Service Company ("Northeast") to oversee Northeast's temporary contractual hiring. (Exhibit D, Kathy Shapleigh deposition at 6-7).

5. Guidant receives orders for contract employees from Northeast, and then Guidant submits these orders to one of the 40 or more staffing agencies that are a part of the Guidant Group program. (Exhibit D, Kathy Shapleigh deposition at 8-9).

6. National was one of the staffing agencies that contracted with Guidant to be part of the Guidant Group program. (Exhibit C, Chris Sullivan's deposition at 8-10).

7. The staffing agencies submit resumes/candidates to fill the orders placed by Guidant. Guidant then forwards the resumes onto Northeast for their review and approval. (Exhibit D, Kathy Shapleigh deposition at 10-11).

8. The hiring manager at Northeast makes the ultimate decision whether to hire the proposed candidate(s) for a contract employee position. (Exhibit D, Kathy Shapleigh deposition at 11).

9. Once a candidate is selected, Northeast contacts Guidant and makes an offer. Guidant then contacts the staffing agency and makes the offer of temporary employment. (Exhibit D, Kathy Shapleigh deposition at 11).

10. This employment offer is contingent and depends on whether the candidate passes the background check and drug screening test. (Exhibit D, Kathy Shapleigh deposition at 22).

11. Kathy Shapleigh, Senior Contingent Resource Consultant at the Guidant Group, submitted an order for a temporary employment position of Contract Analyst. (Exhibit C, Chris Sullivan's deposition at 10-12).

12. Larry O'Keefe, technical recruiter for National, submitted plaintiff's resume as a candidate for the Contract Analyst position. (Exhibit C, Chris Sullivan's deposition at 16-18).

13. Kathy Shapleigh sent the Plaintiff's resume to Northeast Utilities. (Exhibit D, Shapleigh's deposition at 9-10).

14. Kathy Shapleigh scheduled the plaintiff's interview with the hiring manager of Northeast. (Exhibit. D, Shapleigh's deposition at 10-11).

15. Plaintiff interviewed with Mr. Maddox at Northeast. (Exhibit C, Chris Sullivan's deposition at 21).

16. Northeast contacted Guidant about extending an offer for the contract analyst position to plaintiff. (Exhibit. D, Shapleigh's deposition at 13-14).

17. Guidant sent an automatically generated message to National telling National to extend an offer of employment to plaintiff for the contract analyst position. (Exhibit C, Chris Sullivan's deposition at 22-23).

18. Larry O'Keefe from National offered the contract analyst to plaintiff via telephone, but said offer was contingent on plaintiff passing criminal background and drug screening tests. (Exhibit C, Chris Sullivan's deposition at 23-24).

19. Plaintiff orally accepted the employment offer and National sent her an employment packet, which included but was not limited to an I9 form, background release form, drug testing form and direct deposit documents. (Exhibit C, Chris Sullivan's deposition at 24-25).

2157934.1

20. During the application process for contract analyst position at Northeast, plaintiff was working as a paralegal with C.B. Richard Ellis. (Exhibit E, plaintiff's deposition at 42).

21. Plaintiff was placed in this thirty-day position by Legal Now. (Exhibit E, plaintiff's deposition at 42).

22. After receiving the contingent offer from National, plaintiff gave Legal Now two weeks notice that she would be leaving her position with C.B. Richard Ellis. (Exhibit E, plaintiff's deposition at 42).

23. Plaintiff received the aforementioned employment packet from National. (Exhibit E, plaintiff's deposition at 66).

24. The employment packet contained the "Consumer Report/Investigative Consumer Report Disclosure and Release of Information Authorization" form, which the Plaintiff signed on May 2, 2007. (Exhibit F, Consumer Report/ Information Authorization form).

25. Said form authorized National and Verifications to conduct plaintiff's background investigation and electronically submit the results of said investigation. (Exhibit F, Consumer Report/ Information Authorization form).

26. By signing the Consumer Report/Investigative Consumer Report Disclosure and Release of Information Authorization" form, plaintiff acknowledged that she needed to be willing to take and pass a background check and drug screening test to receive the employment assignment. (Exhibit F, Consumer Report/ Information Authorization form).

27. Plaintiff understood that the results of the background check and drug screening test would be released to Northeast and Guidant. (Exhibit E, plaintiff's deposition at 139-140).

28. Plaintiff returned the completed employment packet to National, and National employee, Maura Demars, entered plaintiff's information into Verifications' online system. (Exhibit C, Chris Sullivan's deposition at 25).

29. Verifications searched National Background Data's database of criminal records using plaintiff's name and date of birth. (Exhibit A, Poquette's deposition at 27-28).

30. Based on the results of this search, several possible criminal records were identified by Verifications that could belong to plaintiff. (Exhibit A, Poquette's deposition at 28).

31. Verifications ordered additional research to be done by its field researcher in the jurisdiction of Pittsylvania County, Virginia. (Exhibit A, Poquette's deposition at 29).

32. The field researcher performed the additional research and sent the report to Verifications. (Exhibit A, Poquette's deposition at 30; Exhibit G, Pittsylvania County Court Record).

33. The report indicated that "Debra Jean Adams" with plaintiff's date of birth, and "Debra Adams" with plaintiff's date of birth, had criminal convictions in Pittsylvania, Virginia. (Exhibit G, Pittsylvania County Court Record).

34. On May 8, 2007, Verifications provided a summarized version of this report to National. (Exhibit A, Poquette's deposition at 34).

35. Soon thereafter, Chris Sullivan, account manager/recruiter with National, sent an email to Kathy Shapleigh at Guidant on May 8, 2007 at 3:49 p.m. regarding plaintiff's background report. (Exhibit. D, Shapleigh's deposition at 18-19).

36. Plaintiff called Chris Sullivan at National on May 8, 2007 at approximately 6 p.m. (Exhibit E, plaintiff's deposition at 71; Exhibit C, Chris Sullivan's deposition at 28).

37. Chris Sullivan stated that there was an issue with plaintiff's background check. (Exhibit E, plaintiff's deposition at 71).

38. Plaintiff told Chris Sullivan that she underwent a background investigation for an employment position in 2006, which stated false prior convictions. (Exhibit E, plaintiff's deposition at 72-73).

39. Plaintiff only raised the issue of her prior false background report from 2006 after she was told of the results of her background investigation, which is the subject of this underlying action. (Exhibit E, plaintiff's deposition at 72-73).

40. After speaking with plaintiff on the evening of May 8, 2007, Chris Sullivan sent a second email to Kathy Shapleigh at 6:21 p.m on May 8, 2007, which stated that plaintiff disputed the results of the background check. (Exhibit. D, Shapleigh's deposition at 27-28; Exhibit C, Chris Sullivan's deposition at 29-30).

41. At some point on between Chris Sullivan's 3:49 p.m. and 6:21 p.m. emails to Kathy Shapleigh on May 8, 2007, Ms. Shapleigh contacted the hiring manager at Northeast and advised that plaintiff failed the background check and was ineligible to work. (Exhibit D, Shapleigh's deposition at 22-23).

2157934.1

42. At this time, Kathy Shapleigh also entered into the Guidant system that the candidate failed the background check and the order for contract analyst was still active and needed to be filled. (Exhibit D, Shapleigh's deposition at 23).

43. At 6:25 p.m. on May 8, 2007, Chris Sullivan sent a third email to Kathy Shapleigh again indicating that plaintiff was disputing the results of the background check. (Exhibit D, Shapleigh's deposition at 29; Exhibit C, Chris Sullivan's deposition at 29).

44. After receiving the second and third emails from Chris Sullivan at 6:21 p.m and 6:25 p.m on May 8, 2007, Kathy Shapleigh did not contact Northeast to let them know that plaintiff was disputing the results of the background search. (Exhibit D, Shapleigh's deposition at 28-29).

45. Ms. Shapleigh considered the plaintiff to have failed her background check at this time, and she stated that she had no ability to delay the termination of the employment offer until she received a second background check. (Exhibit D, Shapleigh's deposition at 28-29).

46. On May 9, 2007, Verifications learned that plaintiff disputed the results of the background check when it received a faxed letter from plaintiff to the Federal Trade Commission. (Exhibit A, Poquette's deposition at 35).

47. On May 9, 2007, plaintiff also contacted Verifications directly to dispute the results of the background check. (Exhibit A, Poquette's deposition at 42-43).

48. On May 9, 2007, Verifications' employee, Robin Mack, put the verification of plaintiff's background check on hold. (Exhibit A, Poquette's deposition at 43-44).

2157934.1

49. Verifications conducted further investigation regarding plaintiff's disputed background check. (Exhibit A, Poquette's deposition at 44-45).

50. On May 10, 2007, Verifications sent the revised background report to National, which removed the criminal information from plaintiff's background report. (Exhibit A, Poquette's deposition at 49).

51. At 4:14 p.m. on May 11, 2007, Verifications called plaintiff and advised her that the report was corrected and National had been contacted regarding the same. (Exhibit A, Poquette's deposition at 49-50).

52. On May 11, 2007, Chris Sullivan contacted Kathy Shapleigh and advised her that the plaintiff's background check had been corrected. (Exhibit D, Shapleigh's deposition at 30; Exhibit C, Chris Sullivan's deposition at 33).

53. At 5:55 p.m. on May 11, 2007, Kathy Shapleigh emailed Pat Angelo-Park at Northeast that plaintiff's background check was corrected, and that plaintiff was now eligible for employment. (Exhibit D, Shapleigh's deposition at 32-33).

54. As of 5:55 p.m. on May 11, 2007, the contract analyst position was still listed as open and had not been filled by another candidate. (Exhibit D, Shapleigh's deposition at 33-34).

55. The hiring manager at Northeast indicated that he was pursuing bringing in an intern to fill the open contract analyst position. (Exhibit D, Shapleigh's deposition at 36).

56. Northeast eventually cancelled the open contract analyst position. (Exhibit D, Shapleigh's deposition at 34).

Yours, etc.,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By: _____
Michael W. Coffey
Attorneys for the Defendant
VERIFICATIONS INC.
3 Gannett Drive
White Plains, New York 10604
Tel: (914) 323-7000
Fax: (914) 323-7001
Michael.Coffey@wilsonelser.com
U.S. Court Number 18310
File No.: 08379.00072

## **CERTIFICATION**

It is hereby certified that the above was electronically filed and mailed to all counsel of record on the 28th day of October 2008:

TO:

Madsen, Prestley & Parenteau, LLC
Attorneys for Plaintiff
44 Capitol Avenue
Suite 201
Hartford, CT 06106
Attn: Attorney William Madsen

Goldstein and Peck, P.C.
1087 Broad Street
Bridgeport, CT 06604
Attn: Attorney William J. Kupinse, Jr.

_____
Michael W. Coffey
(U.S. Court No. 18310)

2157934.1