UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DEBORAH ADAMS, | : |
| | : Civil Action No.: |
| Plaintiff, | : 307CV01035 |
| | : |
| -against- | : |
| | : November 4, 2008 |
| NATIONAL ENGINEERING SERVICE CORPORATION | : |
| and VERIFICATIONS INC. | : |
| | : |
| Defendants. | : |
| | : |
| | : |

## <u>DEFENDANT, VERIFICATIONS INC.'S, MEMORANDUM OF LAW IN OPPOSITION OF NATIONAL ENGINEERING SERVICE CORPORATION'S MOTION FOR SUMMARY JUDGMENT</u>

Verifications Inc. ("Verifications"), Defendant in the above referenced matter, respectfully submits this Memorandum of Law in Opposition of National Engineering Service Corporation's (National's) Motion for Summary Judgment.

### I.     FACTS

Kathy Shapleigh, Senior Contingent Resource Consultant at the Guidant Group, submitted an order for a temporary employment position of Contract Analyst at Northeast Utilities Service Company ("Northeast"). (Exhibit C, Chris Sullivan's deposition at 10-12). The Guidant Group, Inc., (formally Comensura, "Guidant") contracted with Northeast Utilities Service Company ("Northeast") to oversee Northeast's temporary contractual hiring. (Exhibit D, Kathy Shapleigh deposition at 6-7). Guidant receives orders for contract employees from Northeast, and then Guidant submits these orders to one of the 40 or more staffing agencies that are a part of the Guidant Group program. (Exhibit D, Kathy Shapleigh deposition at 8-9).

Larry O'Keefe, technical recruiter for National, submitted plaintiff's resume as a candidate for the Contract Analyst position. (Exhibit C, Chris Sullivan's deposition at 16-18). National is a staffing agency that provides other companies with employees on a contract/temporary basis. (Exhibit C, Chris Sullivan's deposition at 5-6). National was one of the staffing agencies that contracted with Guidant to be part of the Guidant Group program. (Exhibit C, Chris Sullivan's deposition at 8-10).

The staffing agencies, such as National, submit resumes/candidates to fill the orders placed by Guidant. Guidant then forwards the resumes onto Northeast for their review and approval. (Exhibit D, Kathy Shapleigh deposition at 10-11). The hiring manager at Northeast makes the ultimate decision whether to hire the proposed candidate(s) for a contract employee position. (Exhibit D, Kathy Shapleigh deposition at 11). Once a candidate is selected, Northeast contacts Guidant and makes an offer. Guidant then contacts the staffing agency and makes the offer of temporary employment. (Exhibit D, Kathy Shapleigh deposition at 11). This employment offer is contingent and depends on whether the candidate passes the background check and drug screening test. (Exhibit D, Kathy Shapleigh deposition at 22).

After Larry O'Keefe submitted plaintiff's resume, Kathy Shapleigh sent the Plaintiff's resume to Northeast. (Exhibit D, Shapleigh's deposition at 9-10). Kathy Shapleigh scheduled the plaintiff's interview with the hiring manager of Northeast. (Exhibit. D, Shapleigh's deposition at 10-11). Larry O'Keefe then contacted the plaintiff and advised her that she would be interviewed by Byron Maddox at Northeast. (Exhibit E, plaintiff's deposition at 62).

Plaintiff interviewed with Mr. Maddox at Northeast. (Exhibit C, Chris Sullivan's deposition at 21). Soon thereafter, Northeast contacted Guidant about extending an offer for the contract analyst position to plaintiff. (Exhibit. D, Shapleigh's deposition at 13-14). Guidant then

2

sent an automatically generated message to National telling National to extend an offer of employment to plaintiff for the contract analyst position. (Exhibit C, Chris Sullivan's deposition at 22-23).

Larry O'Keefe offered the contract analyst position to plaintiff via telephone, but said the offer was contingent on plaintiff passing criminal background and drug screening tests. (Exhibit C, Chris Sullivan's deposition at 23-24). At this time, plaintiff was working as a paralegal with C.B. Richard Ellis. (Exhibit E, plaintiff's deposition at 42). Plaintiff was placed in this thirty-day position with C.B. Richard Ellis by Legal Now, another staffing agency. (Exhibit E, plaintiff's deposition at 42).

Plaintiff orally accepted the employment offer for the contract analyst position while speaking with Mr. O'Keefe on the telephone. (Exhibit C, Chris Sullivan's deposition at 24-25). After receiving the contingent offer from National, plaintiff gave Legal Now two weeks notice that she would be leaving her position with C.B. Richard Ellis. (Exhibit E, plaintiff's deposition at 42).

National sent plaintiff an employment packet, which included but was not limited to an I9 form, background release form, drug testing form and direct deposit documents. (Exhibit C, Chris Sullivan's deposition at 24-25). Shortly thereafter, plaintiff received the aforementioned employment packet from National in the mail. (Exhibit E, plaintiff's deposition at 66).

The employment packet contained the "Consumer Report/Investigative Consumer Report Disclosure and Release of Information Authorization" form, which the Plaintiff signed on May 2, 2007. (Exhibit F, Consumer Report/ Information Authorization form). Said form authorized National and Verifications to conduct plaintiff's background investigation and electronically submit the results of said investigation. (Exhibit F, Consumer Report/ Information Authorization

3

form).  By signing the Consumer Report/Investigative Consumer Report Disclosure and Release of Information Authorization" form, plaintiff acknowledged that she needed to be willing to take and pass a background check and drug screening test to receive the employment assignment. (Exhibit F, Consumer Report/ Information Authorization form).  Plaintiff understood that the results of the background check and drug screening test would be released to Northeast and Guidant. (Exhibit E, plaintiff's deposition at 139-140).

Verifications is a company that handles background investigations.  (Exhibit A, Mary Poquette's deposition at 6.)   Verifications and National Engineering Service Corporation ("National") entered into User Certification and Client Services Agreement by which National agreed to purchase employment screening products from Verifications, including Background Investigations and Substance Abuse Services.  (Exhibit B, User Service Agreement).

Plaintiff returned the completed employment packet to National, and National employee, Maura Demars, entered plaintiff's information into Verifications' online system.  (Exhibit C, Chris Sullivan's deposition at 25).  Verifications searched National Background Data's database of criminal records using plaintiff's name and date of birth.  (Exhibit A, Poquette's deposition at 27-28).  Based on the results of this search, several possible criminal records were identified by Verifications that could belong to plaintiff.  (Exhibit A, Poquette's deposition at 28).

Verifications ordered additional research to be done by its field researcher in the jurisdiction of Pittsylvania County, Virginia.  (Exhibit A, Poquette's deposition at 29).  The field researcher performed the additional research and sent the report Verifications.  (Exhibit A, Poquette's deposition at 30; Exhibit G, Pittsylvania County Court Record).  The report indicated that "Debra Jean Adams" with plaintiff's date of birth, and "Debra Adams" with plaintiff's date of

birth, had criminal convictions in Pittsylvania, Virginia. (Exhibit G, Pittsylvania County Court Record).

On May 8, 2007, Verifications provided a summarized version of this report to National. (Exhibit A, Poquette's deposition at 34). Soon thereafter, Chris Sullivan, account manager/recruiter with National, sent an email to Kathy Shapleigh at Guidant on May 8, 2007 at 3:49 p.m. regarding plaintiff's background report. (Exhibit. D, Shapleigh's deposition at 18-19).

Plaintiff called Chris Sullivan at National on May 8, 2007 at approximately 6 p.m. (Exhibit E, plaintiff's deposition at 71; Exhibit C, Chris Sullivan's deposition at 28). Chris Sullivan stated that there was an issue with plaintiff's background check. (Exhibit E, plaintiff's deposition at 71). Plaintiff told Chris Sullivan that she underwent a background investigation for an employment position in 2006, which stated false prior convictions. (Exhibit E, plaintiff's deposition at 72-73). Plaintiff only raised the issue of her prior false background report from 2006 after she was told of the results of her background investigation, which is the subject of this underlying action. (Exhibit E, plaintiff's deposition at 72-73).

After speaking with plaintiff on the evening of May 8, 2007, Chris Sullivan sent a second email to Kathy Shapleigh at 6:21 p.m on May 8, 2007, which stated that plaintiff disputed the results of the background check. (Exhibit. D, Shapleigh's deposition at 27-28; Exhibit C, Chris Sullivan's deposition at 29-30). At some point on between Chris Sullivan's 3:49 p.m. and 6:21 p.m. emails to Kathy Shapleigh on May 8, 2007, Ms. Shapleigh contacted the hiring manager at Northeast and advised that plaintiff failed the background check and was ineligible to work. (Exhibit D, Shapleigh's deposition at 22-23). At this time, Kathy Shapleigh also entered into the Guidant system that the candidate failed the background check and the order for contract analyst was still active and needed to be filled. (Exhibit D, Shapleigh's deposition at 23).

At 6:25 p.m. on May 8, 2007, Chris Sullivan sent a third email to Kathy Shapleigh again indicating that plaintiff was disputing the results of the background check.    (Exhibit D, Shapleigh's deposition at 29; Exhibit C, Chris Sullivan's deposition at 29).  After receiving the second and third emails from Chris Sullivan at 6:21 p.m and 6:25 p.m on May 8, 2007, Kathy Shapleigh did not contact Northeast to let them know that plaintiff was disputing the results of the background search. (Exhibit D, Shapleigh's deposition at 28-29).  Ms. Shapleigh considered the plaintiff to have failed her background check at this time, and she stated that she had no ability to delay the termination of the employment offer under she received a second background check. (Exhibit D, Shapleigh's deposition at 28-29).

On May 9, 2007, Verifications learned that plaintiff disputed the results of the background check when it received a faxed letter from plaintiff to the Federal Trade Commission. (Exhibit A, Poquette's deposition at 35).  On May 9, 2007, plaintiff also contacted Verifications directly to dispute the results of the background check.  (Exhibit A, Poquette's deposition at 42-43).

Later that same day, Verifications' employee, Robin Mack, put the verification of plaintiff's background check on hold. (Exhibit A, Poquette's deposition at 43-44).  Verifications conducted further investigation regarding plaintiff's disputed background check. (Exhibit A, Poquette's deposition at 44-45).   On May 10, 2007, Verifications sent the revised background report to National, which removed the criminal information from plaintiff's background report. (Exhibit A, Poquette's deposition at 49).  At 4:14 p.m. on May 11, 2007, Verifications called plaintiff and advised her that the report was corrected and National had been contacted regarding the same. (Exhibit A, Poquette's deposition at 49-50).

6

On May 11, 2007, Chris Sullivan contacted Kathy Shapleigh and advised her that the plaintiff's background check had been corrected. (Exhibit D, Shapleigh's deposition at 30; Exhibit C, Chris Sullivan's deposition at 33). At 5:55 p.m. on May 11, 2007, Kathy Shapleigh emailed Pat Angelo-Park at Northeast that plaintiff's background check was corrected, and that plaintiff was not eligible for employment. (Exhibit D, Shapleigh's deposition at 32-33). As of 5:55 p.m. on May 11, 2007, the contract analyst position was still listed as open and had not been filled by another candidate. (Exhibit D, Shapleigh's deposition at 33-34).

The hiring manager at Northeast indicated that he was pursuing bringing in an intern to fill the open contract analyst position. (Exhibit D, Shapleigh's deposition at 36). Northeast eventually cancelled the open contract analyst position. (Exhibit D, Shapleigh's deposition at 34).

## II. PROCEDURAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(b), "a party against whom a claim . . . is asserted . . . may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." "The judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ P. 56(c). The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. Adickes v. S.H. Kress & Co., 398 U.S.

7

144, 157 (1970). The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. <u>Amaker v. Foley</u>, 274 F.3d 677 (2d Cir. 2001); <u>Chipollini v. Spencer Gifts, Inc.</u>, 814 F.2d 893 (3d Cir 1987) (*en banc*). The party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). If the movant is able to meet that burden the burden is upon the non-moving party to demonstrate that, as to a material fact, a genuine issue exists. Fed. R. Civ. P. 56(e).

In determining whether a genuine issue exists as to a material fact, the court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party. <u>U.S. v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962). Also, the court must draw all reasonable inferences in favor of the non-moving party. <u>Leon v. Murphy</u>, 988 F.2d 303, 308 (2d Cir. 1993).

## III.   ARGUMENT SECTION:

### A.   DEFENDANT, VERIFICATIONS' INC., DOES NOT OFFER ANY OPPOSITION TO THE SECTIONS OF NATIONAL'S MOTION FOR SUMMARY JUDGMENT THAT RELATE TO COUNTS ONE, TWO AND EIGHT OF PLAINTIFF'S COMPLAINT.

Verifications does not offer any opposition to National's motion for summary judgment with respect to Count One, Count Two and Count Eight of plaintiff's complaint.

8

**B.  MATERIAL ISSUES OF FACT EXIST AS TO WHETHER NATIONAL NEGLIGENTLY FAILED TO COMPLY WITH THE REQUIREMENTS OF 15 U.S.C. §1681(e)(b) (COUNT THREE)**

Material issues of fact exist as to whether National is a consumer reporting agency and whether it complied with the requirements of 15 U.S.C. §1681(e)(b) under the Fair Credit Reporting Act, and therefore National's motion for summary judgment with respect to Count Three of plaintiff's complaint should be denied.

Please note, National disclosed their expert, Anne Fortney on September 30, 2008, which was two months after experts were scheduled to be disclosed pursuant to the court's discovery order. (Exhibit I, Discovery Scheduling Order). Based on this disclosure, plaintiff requested an extension of time to depose National's expert and oppose National's motion for summary judgment, which was granted by the court. (Exhibit J, Court Order granting plaintiff's request for time). Verifications moved for the same extension, but said motion has not been ruled on. Verifications has not had the opportunity to depose Ms. Fortney to refute the arguments raised in her report. As such, Verifications does reserve the right to amend these opposition papers based on Ms. Fortney's testimony if necessary.

15 U.S.C. §1681(e)(b) states: "Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

There are material issues of fact as to whether National should be classified as a credit reporting agency. Under 15 U.S.C. §1681a(f):

> "a consumer reporting agency is defined as any person which for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the

9

purpose of preparing or furnishing consumer reports." <u>Williams v. Amity Bank</u>, 703 F. Supp. 223, 226 (D. Conn. 1988).

In the case at bar, it is clear that National evaluated the background report provided by Verifications and then furnished the same to two third parties, Guidant and Northeast. Therefore, it appears that National satisfied the definition of a consumer reporting agency.

Courts generally agree that in order to succeed on a claim under 15 U.S.C. § 1681e(b), a plaintiff must show that:

> (1) the consumer reporting agency was negligent in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (2) the consumer reporting agency reported inaccurate information about the plaintiff; (3) the plaintiff was injured; and (4) the consumer reporting agency's negligence proximately caused the plaintiff's injury. <u>Collins v. Experian Credit Reporting Serv.</u>, 494 F. Supp. 2d 127, 134-35 (Conn. 2007); <u>Whelan v. Trans Union Credit Reporting Agency</u>, 862 F. Supp. 824, 829 (E.D.N.Y. 1994) (citing <u>Houston v. TRW Info. Servs., Inc.</u>, 1989 U.S. Dist. LEXIS 4437, 1989 WL 59850 (S.D.N.Y. May 2, 1989), aff'd, 896 F.2d 543 (2d Cir. 1990)).

Even if the information is shown to be inaccurate, a plaintiff must still present some evidence that the credit reporting agency failed to follow reasonable procedures in preparing the report in question. <u>Whelan</u>, 862 F. Supp. at 829.

In the case at bar, it appears that National failed to follow any reasonable procedures with respect to plaintiff's background report. Once National received the first background report from Verifications, National then forwarded the report onto Northeast. (Exhibit D, Shapleigh's deposition at 18-19). National never contacted the plaintiff to give her an opportunity to dispute the results of the report. Plaintiff contacted National, which was the reason she found out that there was an issue. Plaintiff never received any notices informing her as to the adverse decision that was made with respect to her employment application. This conduct can hardly be considered reasonable when examining the adverse action requirements of the Fair Credit

10

Reporting Act. It is clear that National had no reasonable procedures in place at National to ensure compliance with the Fair Credit Reporting Act.

As such, National should be classified as a consumer reporting agency, it failed to comply with the requirements of 15 U.S.C. §1681(e)(b), and therefore National's motion for summary judgment with respect to Count Three of plaintiff's complaint should be denied.

C. **MATERIAL ISSUES OF FACT EXIST AS TO WHETHER NATIONAL NEGLIGENTLY FAILED TO COMPLY WITH THE REQUIREMENTS OF 15 U.S.C. §1681(k) (COUNT FOUR).**

Material issues of fact exist as to whether National is a consumer reporting agency and whether it complied with the requirements of 15 U.S.C. §1681(k) under the Fair Credit Reporting Act, and therefore National's motion for summary judgment with respect to Count Four of plaintiff's complaint should be denied.

15 U.S.C. §1681(k) states:

> (a) In general. A consumer reporting agency which furnishes a consumer report for employment purposes and which for that purpose compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall--
> (1) at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; OR
> (2) maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date. For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported.

There are material issues of fact as to whether National should be classified as a credit reporting agency. Under 15 U.S.C. §1681a(f):

> "a consumer reporting agency is defined as any person which for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other

11

information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." Williams v. Amity Bank, 703 F. Supp. 223, 226 (D. Conn. 1988).

In the case at bar, it is clear that National evaluated the background report provided by Verifications and then furnished the same to two third parties, Guidant and Northeast. Therefore, it appears that National satisfied the definition of a consumer reporting agency.

15 U.S.C. §1681(k) requires a reporting agency to notify the consumer OR maintain strict procedures. (Exhibit H, Barry Nadell's expert report at 10). Reporting agencies are not required to do both under the Fair Credit Reporting Act. (Exhibit H, Barry Nadell's expert report at 10).

In the case at bar, it appears that National neither notified the plaintiff properly nor maintained strict procedures. Once National received the first background report from Verifications, National then forwarded the report onto Northeast. (Exhibit D, Shapleigh's deposition at 18-19). Ms. Shapleigh at Guidant then contacted the hiring manager at Northeast and advised that plaintiff failed the background check and was ineligible to work. (Exhibit D, Shapleigh's deposition at 22-23). National never called plaintiff to give her an opportunity to dispute the results of the report. Plaintiff contacted National, which was the reason she found out that there was an issue. Plaintiff never received any notices informing her as to the adverse decision that was made with respect to her employment application. Once plaintiff disputed the contents, an updated report was provided by Verifications two days later. However, by this time, since National did not allow plaintiff an opportunity to dispute the results of the report, she was no longer eligible for the position. It is clear that plaintiff was not notified and there were no strict procedures in place at National to ensure compliance with the Fair Credit Reporting Act.

2171553.1

As such, National should be classified as a consumer reporting agency, it failed to comply complied with the requirements of 15 U.S.C. §1681(k), and therefore National's motion for summary judgment with respect to Count Four of plaintiff's complaint should be denied.

### D. NATIONAL FAILED TO COMPLY WITH THE REQUIREMENTS OF 15 U.S.C. §1681b(b)(3), AND THEREFORE NATIONAL'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED

National failed to comply with the requirements of 15 U.S.C. §1681b(b)(3), and therefore National's motion for summary judgment should be denied.

15 U.S.C. §1681b deals with adverse action requirements and states:

> "(3) Conditions on use for adverse actions.
> (A) In general. Except as provided in subparagraph (B), in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates--
> (i) a copy of the report; and
> (ii) a description in writing of the rights of the consumer under this title, as prescribed by the Federal Trade Commission under section 609(c)(3)."

According to Barry Nadell's expert report, a pre-adverse action notice was required by National under the Fair Credit Reporting Act. (Exhibit H, Barry Nadell's expert report at 14). The pre-adverse notice is required to provide the applicant with a copy of the report, which gives the applicant an opportunity to review and respond to the report. (Exhibit H, Barry Nadell's expert report at 14). Furthermore, another notice is required once an adverse decision has been reached. (Exhibit H, Barry Nadell's expert report at 14).

> "This document must contain the name, address and phone number of the employment screening company, statement that the employer, not the background screening company, is responsible for making an adverse decision, and a notice that the individual has the right to dispute the accuracy or the completeness of any of the information in the report." (Exhibit H, Barry Nadell's expert report at 11).

13

Furthermore, Verifications and National Engineering Service Corporation ("National") entered into User Certification and Client Services Agreement by which National agreed to purchase employment screening products from Verifications, including Background Investigations and Substance Abuse Services. (Exhibit B, User Service Agreement). Pursuant to this agreement, National agreed that if adverse employment action is to be taken, based either in whole or part on information provided by Verifications in a Consumer report, National would comply with adverse action requirements as defined in Fair Credit Reporting Act. (Exhibit B, User Service Agreement).

Based on the requirements of the Fair Credit Reporting Act and the terms of the User Service Agreememt, it is clear that National failed to follow the adverse action procedures. Once National received the first background report from Verifications, National then forwarded the report onto Northeast. Plaintiff was never given a proper opportunity to dispute the results of the report. Plaintiff never received any adverse action notices informing her as to the adverse decision that was made with respect to her employment application. Once plaintiff disputed the contents, an updated report was provided by Verifications two days later. However, by this time, since National did not allow plaintiff an opportunity to dispute the results of the report, she was no longer eligible for the position.

Therefore, material issues of fact exist as to whether National followed the adverse action requirements of the Fair Credit Reporting Act, and National's motion for summary judgment should be denied.

14

2171553.1

**E.    MATERIAL ISSUES OF FACT EXIST WITH RESPECT TO PLAINTIFF'S ALLEGATIONS OF NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AS TO NATIONAL (COUNT SEVEN)**

Material issues of fact exist with respect to the allegations of negligent infliction of emotional distress as to National, and therefore National's motion for summary judgment with respect to Count Seven of plaintiff's complaint should be denied.

In order to demonstrate evidence of a claim for negligent infliction of emotional distress, plaintiff must prove that the defendant "should have realized that its conduct was involved in an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm." Downing v. W. Haven Bd. of Educ., 162 F. Supp. 2d 19 (USDC Conn. 2001); Ancona v. Manafort Brothers, Inc., 746 A.2d 184 (Conn. App. 2000); Morris v. Hartford Courant Co., 513 A.2d 66; Montinieri v. Southern New England Telephone Co., 398 A.2d 1180 (1978).

"This essentially requires that the fear or distress experienced by the plaintiffs be reasonable in light of the conduct of the defendants. If the fear were unreasonable in light of the defendants' conduct, the defendants would not have recognized that their conduct could cause this distress and, therefore, they would not be liable." Downing v. W. Haven Bd. of Educ., 162 F. Supp. 2d at 40-41.

National provided Guidant and Northeast with plaintiff's initial background report before providing plaintiff with an opportunity to dispute the results. By the time plaintiff was informed that there was an issue with her background investigation report, her potential employers ruled her ineligible to work. National failed to follow the adverse action requirements of the Fair Credit Reporting Act and should have realized that this conduct could potentially cause distress to plaintiff during the employment application process.

By not allowing plaintiff to dispute the results of the background report until after the results were published, National may have caused emotional distress for plaintiff. Therefore, material issues of fact exist with respect to the allegations of negligent infliction of emotional distress against National, and National's motion for summary judgment with respect to Count Seven of plaintiff's complaint should be denied.

### F. MATERIAL ISSUES OF FACT EXIST WITH RESPECT TO PLAINTIFF'S ALLEGATIONS OF DEFAMATION/LIBEL AS TO NATIONAL (COUNT NINE).

Material issues of fact exist with respect to the allegations of defamation/libel as to National, and therefore National's motion for summary judgment with respect to Count Nine of plaintiff's complaint should be denied.

In order for plaintiff to establish a claim for defamation, plaintiff must demonstrate that:

> "(1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the Plaintiffs reputation suffered injury as a result of the statement." Cweklinsky v. Mobil Chemical Co., 267 Conn. 210, 217 (2004).

In plaintiff's employment packet, there was a "Consumer Report/Investigative Consumer Report Disclosure and Release of Information Authorization" form, which the Plaintiff signed on May 2, 2007. (Exhibit F, Consumer Report/ Information Authorization form). Said form authorized National and Verifications to conduct plaintiff's background investigation and electronically submit the results of said investigation. (Exhibit F, Consumer Report/ Information Authorization form). By signing the Consumer Report/Investigative Consumer Report Disclosure and Release of Information Authorization" form, plaintiff acknowledged that she needed to be willing to take and pass a background check and drug screening test to receive the employment assignment. (Exhibit F, Consumer Report/ Information Authorization form).

16

Verifications never published the results of the background check to anyone except National, who plaintiff authorized to receive said results. National then went ahead and released these results to Guidant and Northeast before giving plaintiff an opportunity to dispute the results of the background check. National has argued that it acted as an "agent" for Northeast. However, the form signed by plaintiff did not make any mention of the results of the background report being published or shared with Guidant or Northeast. (Exhibit F, Consumer Report/ Information Authorization form). If there was any injury to plaintiff's reputation, it would have been the result of National releasing the results of background check to Guidant and Northeast before giving plaintiff an opportunity to dispute the results of the background check.

In conclusion, material issues of fact exist with respect to the allegations of defamation/libel as to National, and therefore National's motion for summary judgment with respect to Count Nine of plaintiff's complaint should be denied.

### G. MATERIAL ISSUES OF FACT EXIST WITH RESPECT TO PLAINTIFF'S ALLEGATIONS OF NEGLIGENCE AS TO NATIONAL (COUNT TEN).

Material issues of fact exist with respect to the allegations of negligence as to National, and therefore National's motion for summary judgment with respect to Count Ten of plaintiff's complaint should be denied.

In order for plaintiff to establish a claim for negligence, plaintiff must demonstrate that there was a duty, a breach of that duty, causation and actual injury. Roach v. Ivari Int'l Ctrs., Inc., 77 Conn. App. 93, 99 (2003); RK Constructors, Inc. v. Fusco Corp., 231 Conn. 381, 384 (1994). "The standard of care in the ordinary negligence case is the care that a reasonably prudent person would exercise under the same circumstances." Roach v. Ivari Int'l Ctrs., Inc., 77 Conn. App. at 102; Smith v. Leuthner, 156 Conn. 422, 424-25 (1968).

17

National breached its duty to plaintiff by failing to allow plaintiff the opportunity to dispute the results of her background investigation report. Verifications provided the initial background investigation to National. Prior to contacting plaintiff to give her an opportunity to dispute the results, National sent Guidant an email regarding the results. (Exhibit D, Shapleigh's deposition at 18-19). Ms. Shapleigh at Guidant then contacted the hiring manager at Northeast and advised that plaintiff failed the background check and was ineligible to work. (Exhibit D, Shapleigh's deposition at 22-23). By the time plaintiff was informed that there was an issue with her background investigation report, her potential employers ruled her ineligible to work. By failing to follow the adverse action requirements of the Fair Credit Reporting Act, National breached its duty to plaintiff.

Clearly, material issues of fact exist as to whether National's actions constituted negligence, and therefore National's motion for summary judgment with respect to Count Ten of plaintiff's complaint should be denied.

## V.  NATIONAL'S MOTION FOR SUMMARY JUDGMENT REGARDING VERIFICATIONS' CROSS CLAIMS SHOULD BE DENIED.

If the plaintiff was caused to sustain damages at the time and place and in the manner set forth in her Verified Complaint due to any culpability other than her own, such damages were sustained by reason of the conduct and breach of contract of National. Therefore, National's motion for summary judgment regarding Verifications' cross claims should be denied.

Verifications and National Engineering Service Corporation ("National") entered into User Certification and Client Services Agreement by which National agreed to purchase employment screening products from Verifications, including Background Investigations and Substance Abuse Services. (Exhibit B, User Service Agreement). Pursuant to this agreement,

18

2171553.1

National agreed that if adverse employment action is to be taken, based either in whole or part on information provided by Verifications in a Consumer report, National would comply with adverse action requirements as defined in Fair Credit Reporting Act. (Exhibit B, User Service Agreement).

National breached this contract by failing to follow the adverse action requirements of the Fair Credit Reporting Act. Plaintiff has alleged that adverse action was taken, as the employment offer for the contract analyst position was withdrawn. National failed to give plaintiff time to dispute the contents of the initial background report. For these reasons as well as those previously argued within this motion, National's conduct breached the User Service Agreement, and Verifications cross-claims against National should be granted.

## VI: CONCLUSION

For the reasons set forth above, National Engineering Service Corporation's motion for summary judgment should be denied, as well as other relief deemed appropriate by this court.

Yours, etc.,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By: _____
Kevin Zimmerman
Attorneys for the Defendant
VERIFICATIONS INC.
3 Gannett Drive
White Plains, New York 10604
Tel: (914) 323-7000
Fax: (914) 323-7001
Kevin.Zimmerman@wilsonelser.com
U.S. Court Number 27837
File No.: 08379.00072

19

## **CERTIFICATION**

It is hereby certified that the above was electronically filed and made electronically available to all counsel of record on the 4th day of November 2008:

TO:

Madsen, Prestley & Parenteau, LLC
Attorneys for Plaintiff
44 Capitol Avenue
Suite 201
Hartford, CT 06106
Attn: Attorney William Madsen

Goldstein and Peck, P.C.
1087 Broad Street
Bridgeport, CT 06604
Attn: Attorney William J. Kupinse, Jr.

Kevin Zimmerman
(U.S. Court No. 27837)

2171553.1

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) ........................................................7, 8

*Amaker v. Foley*, 274 F.3d 677 (2nd Cir. 2001)................................................................8

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)................................................................8

*Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3rd Cir. 1987).........................................8

*Collins v. Experian Credit Reporting Serv.*, 494 F. Supp. 2d 127 (Conn. 2007)..............10

*Downing v. W. Haven Board of Education*, 162 F. Supp. 2d 19 (USDC Conn. 2001)........................................................................................................................15

*Houston v. TRW Information Services, Inc.*, 1989 U.S. Dist. LEXIS 4437, 1989 WL. 59850 (S.D.N.Y. May 2, 1989), [22] aff'd, 896 F.2d 543 (2d Cir. 1990)...........10

*Leon v. Murphy*, 988 F.2d 303 (2nd Cir. 1993).................................................................8

*Williams v. Amity Bank*, 703 F.Supp. 223 (D. Conn. 1988)..........................9, 10, 11, 12

*Whelan v. Trans Union Credit Reporting Agency*, 862 F. Supp. 824 (E.D.N.Y. 1994).............................................................................................................................10

*U.S. v. Diebold, Inc.*, 369 U.S. 654 (1962).......................................................................8

## STATE CASES

*Ancona v. Manafort Brothers, Inc.*, 746 A.2d 184 (Conn. App. 2000)..............................15

*Cweklinsky v. Mobil Chemical Co.*, 267 Conn. 210 (2004) ..............................................16

*Montinieri v. Southern New England Telephone Co.*, 398 A.2d 1180 (1978) .................15

*Morris v. Hartford Courant Co.*, 513 A.2d 66 ................................................................15

*RK Constructors, Inc. v. Fusco Corp.*, 231 Conn. 381 (1994).........................................17

*Roach v. Ivari International Ctrs., Inc.*, 77 Conn. App. 93 (2003)...................................17

*Smith v. Leuthner*, 156 Conn. 422 (1968)........................................................................17

## FEDERAL STATUTES

15 U.S.C. § 1681a(f)..................................................................................9, 10, 11, 12

15 U.S.C. § 1681b(b)(3) ..................................................................................13

15 U.S.C. § 1681(e) .................................................................................9, 10, 11

15 U.S.C. §1681(k)................................................................................11, 12, 13

Fed. R. Civ. P. 56(b).........................................................................................7

Fed. R. Civ. P. 56(c).........................................................................................7

Fed. R. Civ. P. 56(e).........................................................................................8

2174458.1