UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DEBORAH ADAMS,<br><br>               Plaintiff,<br><br>-against-<br><br>NATIONAL ENGINEERING SERVICE CORPORATION<br>and VERIFICATIONS INC.<br><br>               Defendants. | Civil Action No.:<br>307CV01035<br><br>November 4, 2008 |

## LOCAL RULE 56(a)(2) STATEMENT

Verifications, Inc. ("Verifications"), Defendant in the above-referenced matter, respectfully submits this Local Rule 56(a)(2) Statement with its Memorandum of Law in Opposition to National Engineering Service Corporation's (National's) Motion for Summary Judgment.

Verifications contends that the following are material facts for which there is no genuine issue to be tried:

1. Verifications admits that National is a staffing agency that provides other companies with employees on a contract/temporary basis. (Exhibit C, Chris Sullivan's deposition at 5-6).

2. Verifications admits that Guidant Group, Inc., (formally Comensura, "Guidant") contracted with Northeast Utilities Service Company ("Northeast") to oversee Northeast's temporary contractual hiring. (Exhibit D, Kathy Shapleigh deposition at 6-7).

2171517.1

3. Verifications admits that Guidant receives orders for contract employees from Northeast, and then Guidant submits these orders to one of the 40 or more staffing agencies that are a part of the Guidant Group program. (Exhibit D, Kathy Shapleigh deposition at 8-9).

4. Verifications admits that the staffing agencies submit resumes/candidates to fill the orders placed by Guidant. (Exhibit D, Kathy Shapleigh deposition at 10-11).

5. Verifications admits that a hiring manager at Northeast decides whether to interview any of the candidates. (Exhibit D, Kathy Shapleigh deposition at 10-11).

6. Verifications admits that the hiring manager at Northeast makes the ultimate decision whether to hire the proposed candidate(s) for a contract employee position. (Exhibit D, Kathy Shapleigh deposition at 11).

7. Verifications admits that once a candidate is selected, Northeast contacts Guidant and makes an offer, and then Guidant contacts the staffing agency and makes the offer of temporary employment. This employment offer is contingent and depends on whether the candidate passes the background check and drug screening test. (Exhibit D, Kathy Shapleigh deposition at 22).

8. Verifications admits that National only receives compensation from Northeast through the Guidant Group, if National's candidate is accepted by Northeast. National's fee is based on the number of hours the candidate works for Northeast. (Exhibit C, Chris Sullivan deposition at 9).

9. Verifications admits that pursuant to the agreement between National and Guidant, all contract employees provided by National to Northeast must follow

2

2171517.1

Northeast site requirements, procedures, polices and training requirements. (Exhibit E of National's Motion, Madden's affidavit at paragraph 6.

10. Verifications admits that plaintiff understood that she would have been required to follow Northeast work polices if she worked at Northeast in the contract position. (Exhibit E, plaintiff's deposition at 126.).

11. Verifications admits that pursuant to the agreement between National and Guidant, Northeast has the authority to require contract employees to work specific hours within workdays and assign duties to contract employees. (Exhibit E of National's Motion, Madden's affidavit at paragraph 7).

12. Verifications admits that pursuant to the agreement between National and Guidant, Northeast has the authority to determine whether a contract employee's performance is satisfactory and whether that employee should be removed. (Exhibit E of National's Motion, Madden's affidavit at paragraph 8).

13. Verifications admits that pursuant to the agreement between National and Guidant, Northeast owns all work product produced by contract employees including all interest in patent rights, copyrights, trade secret rights, and all present and future rights pertaining to all such work product. (Exhibit E of National's Motion, Madden's affidavit at paragraph 9).

14. Verifications admits that Kathy Shapleigh, Senior Contingent Resource Consultant at the Guidant Group, submitted an order for a temporary employment position of Contract Analyst. (Exhibit C, Chris Sullivan's deposition at 10-12).

15. Verifications admits that Kathy Shapleigh sent the Plaintiff's resume to Northeast Utilities. (Exhibit D, Shapleigh's deposition at 9-10).

3

16. Verifications admits that the hiring manager at Northeast notified Kathy Shapleigh that Northeast wanted to interview the plaintiff for the contract analyst position and provided Ms. Shapleigh with dates and times to schedule said interview. (Exhibit D, Shapleigh's deposition at 10-11).

17. Verifications admits that Kathy Shapleigh scheduled the plaintiff's interview with the hiring manager of Northeast. (Exhibit. D, Shapleigh's deposition at 10-11).

18. Verifications admits that after learning that the interview was scheduled, Larry O'Keefe, National employee, contact the plaintiff and informed her that she would be interviewed by Byron Maddox, a Northeast employee. (Exhibit B of National's Motion, O'Keefe affidavit at paragraph 4).

19. Verifications admits that Plaintiff interviewed with Mr. Maddox at Northeast. (Exhibit C, Chris Sullivan's deposition at 21).

20. Verifications admits that plaintiff understood that she was interviewing for an assignment for a Northeast position, and Northeast had the authority to make the final decision as to whether plaintiff was hired as a contract employee. (Exhibit E, plaintiff's deposition at 108).

21. Verifications admits that Larry O'Keefe from National offered the contract analyst to plaintiff via telephone, but said offer was contingent on plaintiff passing criminal background and drug screening tests. (Exhibit C, Chris Sullivan's deposition at 23-24).

22. Verifications admits that plaintiff orally accepted the employment offer and National sent her an employment packet, which included but was not limited to an

4

I9 form, background release form, drug testing form and direct deposit documents. (Exhibit C, Chris Sullivan's deposition at 24-25).

23. Verifications admits that during the application process for contract analyst position at Northeast, plaintiff was working as a paralegal with C.B. Richard Ellis. Plaintiff was placed in this thirty-day position by Legal Now. (Exhibit E, plaintiff's deposition at 42).

24. Verifications admits that plaintiff's position with C.B. Richard Ellis was to last for a period of thirty days. (Exhibit E, plaintiff's deposition at 42).

25. Verifications admits that after plaintiff received the contingent offer from National, she gave Legal Now two weeks notice that she would be leaving her position with C.B. Richard Ellis. (Exhibit E, plaintiff's deposition at 42).

26. Verifications admits that the employment packet plaintiff received from National included a form titled "Employee Hourly Contract and Obligations." (Exhibit E, plaintiff's deposition at 108-109).

27. Verifications admits that paragraph 2 of the "Employee Hourly Contract and Obligations" form states that "[National] is an Employer at Will and is not obligated to offer [plaintiff] employment." (Exhibit E, plaintiff's deposition at 109-110).

28. Verifications admits that plaintiff understood paragraph 2 of the "Employee Hourly Contract and Obligations" form to mean that the contract position at Northeast could have ended at any time. (Exhibit E, plaintiff's deposition at 109-110).

5

2171517.1

29. Verifications admits that the second page of "Employee Hourly Contract and Obligations" form states that the assignment is at Northeast. (Exhibit E, plaintiff's deposition at 112-114).

30. Verifications admits that plaintiff signed the "Employee Hourly Contract and Obligations" form on April 30, 2007. (Exhibit E, plaintiff's deposition at 112-114).

31. Verifications admits that the employment packet sent to plaintiff by National also contained the "Consumer Report/Investigative Consumer Report Disclosure and Release of Information Authorization" form, which the Plaintiff signed on May 2, 2007. By signing said form, plaintiff acknowledged that she needed to be willing to take and pass a background check and drug screening test to receive the employment assignment. (Exhibit F, Consumer Report/ Information Authorization form).

32. Verifications admits that plaintiff understood that the results of the background check and drug screening test would be released to Northeast and Guidant. (Exhibit E, plaintiff's deposition at 139-140).

33. Verifications admits that said form authorized National and Verifications to conduct plaintiff's background investigation and electronically submit the results of said investigation. (Exhibit F, Consumer Report/ Information Authorization form).

34. Verifications admits that plaintiff returned the completed employment packet to National, and National employee, Maura Demars, entered plaintiff's information into Verifications' online system. (Exhibit C, Chris Sullivan's deposition at 25).

2171517.1

35. Verifications denies that Verifications and National have an agreement under which Verifications performs background investigations and substance abuse tests for National. Verifications and National Engineering Service Corporation ("National") entered into User Certification and Client Services Agreement by which National agreed to purchase employment screening products from Verifications, including Background Investigations and Substance Abuse Services. (Exhibit B, User Service Agreement).

36. Verifications denies that National contracted with Verifications to perform criminal background investigations for individuals that it may place in contract employment positions since July 13, 2004. Verifications and National Engineering Service Corporation ("National") entered into User Certification and Client Services Agreement by which National agreed to purchase employment screening products from Verifications, including Background Investigations and Substance Abuse Services. (Exhibit B, User Service Agreement).

37. Verifications admits that prior to plaintiff's complaint, National never received a complaint related to the results of a background investigation performed by Verifications. (Exhibit E of National's Motion, Madden's affidavit at paragraph 12).

38. Verifications admits that Maura Demars entered the plaintiff's first name, last name, social security number, home address and date of birth. (Exhibit A, Poquette's deposition at 10-12).

39. Verifications admits that Verifications searched National Background Data's database of criminal records. (Exhibit A, Poquette's deposition at 27-28).

7

2171517.1

40. Verifications admits that based on the results of this search, several possible criminal records were identified by Verifications that could belong to plaintiff. (Exhibit A, Poquette's deposition at 28).

41. Verifications admits that Verifications ordered additional research to be done by its field researcher, Mohr Information Services, LLC, in the jurisdiction of Pittsylvania County, Virginia. (Exhibit A, Poquette's deposition at 29).

42. Verifications admits that the field researcher performed the additional research and sent the report to Verifications. (Exhibit A, Poquette's deposition at 30; Exhibit G, Pittsylvania County Court Record).

43. Verifications admits that the report indicated that "Debra Jean Adams" with plaintiff's date of birth, and "Debra Adams" with plaintiff's date of birth, had criminal convictions in Pittsylvania, Virginia. (Exhibit G, Pittsylvania County Court Record).

44. Verifications denies that it made a determination that the information received from Mohr should be reported to National. Verifications ordered additional research to be done by Mohr. Mohr sent Verifications a report based on these results, and Verifications provided a summarized version of this report to National. (Exhibit A, Poquette's deposition at 29, 34).

45. Verifications admits that on May 8, 2007, Verifications provided a summarized version of this report to National. (Exhibit A, Poquette's deposition at 34).

46. Verifications admits that soon thereafter, Chris Sullivan, account manager/recruiter with National, sent an email to Kathy Shapleigh at Guidant on May 8, 2007 at

3:49 p.m. regarding plaintiff's background report. (Exhibit. D, Shapleigh's deposition at 18-19).

47. Verifications admits that the email referenced in paragraph 46 stated: "Applicant concern for Deborah Adams and Note: the following case is located under Debra Adams with a matching date of birth- Driving under revocation/suspended operator license- Guilty. Note: the following is located under Debra Jean Adams with a matching date of birth- Welfare Fraud (Felony) – Guilty." (Exhibit C, Shapleigh deposition at 19-20).

48. Verifications admits that plaintiff called Chris Sullivan at National on May 8, 2007 at approximately 6 p.m. (Exhibit E, plaintiff's deposition at 71; Exhibit C, Chris Sullivan's deposition at 28).

49. Verifications admits that Chris Sullivan asked the plaintiff if she thought anything would have come up on her background investigation. (Exhibit C, Sullivan's deposition at 28).

50. Verifications admits that plaintiff told Chris Sullivan that she underwent a background investigation for an employment position in 2006, which stated false prior convictions. (Exhibit E, plaintiff's deposition at 72-73).

51. Verifications admits that plaintiff only raised the issue of her prior false background report from 2006 after she was told of the results of her background investigation, which is the subject of this underlying action. (Exhibit E, plaintiff's deposition at 72-73).

52. Verifications admits that while speaking with plaintiff on the evening of May 8, 2007, Chris Sullivan sent a second email to Kathy Shapleigh at 6:21 p.m on May

2171517.1

9

8, 2007, which stated that plaintiff disputed the results of the background check. (Exhibit. D, Shapleigh's deposition at 27-28; Exhibit C, Chris Sullivan's deposition at 29-30).

53. Verifications admits that at approximately 6:25 p.m. on May 8, 2007, Chris Sullivan sent a third email to Kathy Shapleigh again indicating that plaintiff was disputing the results of the background check. (Exhibit D, Shapleigh's deposition at 29; Exhibit C, Chris Sullivan's deposition at 29).

54. Verifications admits that at some point on between Chris Sullivan's 3:49 p.m. and 6:21 p.m. emails to Kathy Shapleigh on May 8, 2007, Ms. Shapleigh contacted the hiring manager at Northeast and advised that plaintiff failed the background check and was ineligible to work. (Exhibit D, Shapleigh's deposition at 22-23).

55. Verifications admits that after receiving the second and third emails from Chris Sullivan at 6:21 p.m and 6:25 p.m on May 8, 2007, Kathy Shapleigh did not contact Northeast to let them know that plaintiff was disputing the results of the background search. Ms. Shapleigh considered the plaintiff to have failed her background check at this time, and she stated that she had no ability to delay the termination of the employment offer until she received a second background check. (Exhibit D, Shapleigh's deposition at 28-29).

56. Verifications denies that Maura Demars contacted Verifications and notified Verifications that plaintiff disputed the results of the background investigation. On May 9, 2007, Verifications learned that plaintiff disputed the results of the background check when it received a faxed letter from plaintiff to the Federal

10

Trade Commission. Plaintiff also contacted Verifications directly to dispute the results of the background check (Exhibit A, Poquette's deposition at 35, 42-43).

57. Verifications admits that on May 9, 2007, Verifications' employee, Robin Mack, put the verification of plaintiff's background check on hold and Verifications conducted further investigation regarding plaintiff's disputed background check. On May 10, 2007, Verifications sent the revised background report to National, which removed the criminal information from plaintiff's background report. (Exhibit A, Poquette's deposition at 43-45, 49).

58. Verifications admits that on May 9, 2007 at 8:59 a.m., Chris Sullivan sent the plaintiff a copy of her background investigation report. (Exhibit N of National's Motion, Sullivan affidavit at paragraph 4).

59. Verifications admits that on May 9, 2007, Chris Sullivan provided plaintiff with the contact information for Verifications and explained to her that Verifications asked that she bring all issues related to her criminal background report directly to them to expedite the process of verifying its accuracy. (Exhibit N of National's Motion, Sullivan affidavit at paragraph 4).

60. Verifications admits that on May 10, 2007 at 4:21 p.m. (CST), Verifications sent the revised background report to National. (Exhibit A, Poquette's deposition at 52-53).

61. Verifications admits that on May 11, 2007, Chris Sullivan and Kathy Shapleigh spoke and Ms. Shapleigh knew that Plaintiff's background investigation report was corrected to indicate that the convictions did not belong to Plaintiff. (Exhibit D, Shapleigh's deposition at 30; Exhibit C, Chris Sullivan's deposition at 33).

11

2171517.1

62. Verifications admits that at 5:55 p.m. on May 11, 2007, Kathy Shapleigh emailed Pat Angelo-Park at Northeast that plaintiff's background check was corrected, and that plaintiff was now eligible for employment. At this time, the contract analyst position was still listed as open and had not been filled by another candidate (Exhibit D, Shapleigh's deposition at 32-34).

63. Verifications admits that the hiring manager at Northeast decided to pursue other avenues including eventually hiring an intern for the contract position. (Exhibit D, Shapleigh's deposition at 36).

64. Verifications admits that on May 15, 2007, Chris Sullivan inquired into whether the hiring manager made a decision regarding the plaintiff and the contract position, and National was unaware that Northeast was pursuing an intern for the position. (Exhibit D, Shapleigh's deposition at 36).

65. Verifications admits that the contract position at Northeast was eventually cancelled. (Exhibit D, Shapleigh's deposition at 34).

66. Verifications admits that no one at National knows the reason behind Northeast's decision not to accept the plaintiff for the contract position, and no one at National was involved in Northeast's decision to no longer offer the position to plaintiff. (Exhibit E of National's Motion, Madden's affidavit at paragraphs 13 and 14).

67. Verifications admits that plaintiff was probably late in her payment of her electric bill, and prior to May 2007, plaintiff failed to pay her electric bill in full and had previously made payment arrangements due to her failure to pay her electric bills. (Exhibit E, plaintiff's deposition at 175-178).

12

2171517.1

## DISPUTED ISSUES OF MATERIAL FACT

1. Whether National breached the User Service Agreement with Verifications by failing to follow the adverse action requirements of the Fair Credit Reporting Act.

2. Whether National published plaintiff's background investigation report before giving the plaintiff a chance to dispute the results.

3. Whether plaintiff was considered an employee of National Engineering Service Corporation.

Yours, etc.,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By: _____
Kevin Zimmerman
Attorneys for the Defendant
VERIFICATIONS INC.
3 Gannett Drive
White Plains, New York 10604
Tel: (914) 323-7000
Fax: (914) 323-7001
Kevin.Zimmerman@wilsonelser.com
U.S. Court Number 27837
File No.: 08379.00072

13

2171517.1

## **CERTIFICATION**

It is hereby certified that the above was electronically filed and made electronically available to all counsel of record on the 4th day of November 2008:

TO:

Madsen, Prestley & Parenteau, LLC
Attorneys for Plaintiff
44 Capitol Avenue
Suite 201
Hartford, CT 06106
Attn: Attorney William Madsen

Goldstein and Peck, P.C.
1087 Broad Street
Bridgeport, CT 06604
Attn: Attorney William J. Kupinse, Jr.

_____
Kevin Zimmerman
(U.S. Court No. 27837)

14

2171517.1